NF

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
|  | ) Case No. 17 cv |
| **ELLIOTT E. PEPPERS,** | ) |
|  | 1:17-cv-03387 |
| Plaintiff | Judge Amy J. St. Eve |
|  | Magistrate Judge M. David Weisman |
|  | ) |
| V. | ) |
|  | ) |
|  | ) |
| **BENEDICTINE UNIVERSITY ("Benedictine"),** | ) <u>Jury Trial Demand</u> |
| **Michael S. Brophy,** in his official capacity as | ) |
| Benedictine President; **Chad Treisch,** in his official | ) |
| capacity as Benedictine Executive Director of | ) |
| Facilities and Planning; **Marco Masini,** in his official | ) |
| capacity as Benedictine Vice President for Student Life; | ) **FILED** |
| and **Hope Keber,** in her official capacity as Benedictine | ) |
| Counselling Center Director. | ) MAY – 4 2017 |
| Defendants | **THOMAS G. BRUTON** |
|  | **CLERK, U.S. DISTRICT COURT** |

## PLAINTIFF COMPLAINTS

COMES NOW, the Plaintiff, ELLIOTT PEPPERS, by and through his undersigned counsel

and hereby files this Complaint for damages against the above-named Defendants,

BENEDICTINE UNIVERSITY, Benedictine President, MICHAEL S. BROPHY, Benedictine

Executive Director of Facilities and Planning, CHAD TREISCH, Benedictine Vice President of

Student Life, MARCO MASINI, and Benedictine Counselling Center Director, HOPE KEBER,

and as grounds therefore allege:

## I.  NATURE OF THE CLAIM

1.  Plaintiff, ELLIOTT PEPPERS, seeks punitive damages based upon Defendants'
    continuing deprivation of rights accorded to the Plaintiff under the laws of the
    United States and the State of Illinois resulting from acts and/or omissions of the
    named Defendants that constitute the following causes of actions: (a) racial
    discrimination (black); (b) gender discrimination (male); (c) hostile work
    environment; (d) disparate treatment, (e) negligent hiring and retention; (f)
    negligent infliction of emotional harm, (g)  negligent supervision, (h) intentional
    infliction of emotional harm, (j) a pattern and practice of pervasive employment
    discrimination against him in violation of the Civil Rights Act of 1871, as
    amended by the Civil Rights Act of 1991, 42 U.S. C. § 1981 ("Section 1981");
    discrimination in violation of Title VII of the Civil Rights Act of 1964, as
    amended, 42 U.S.C. §2000e et seq. ("Title VII"); discrimination in violation of
    Illinois Civil Rights Act of 2006, 740 ILCS 24 ("Illinois Civil Rights Act") and
    claims under Illinois common law for breach of contract.

2.  Plaintiff filed Charge #440-2017-01504 with the Chicago office of the EEOC on
    January 9, 2017 (See **Exhibit A**, attached hereto) and received his Right to Sue on
    February 3, 2017. (See **Exhibit B**, attached hereto.) The filing deadline is May 4,
    2017.

## II.  JURISDICTION AND VENUE

3.  Jurisdiction is specifically conferred on this Court pursuant to 28 U.S.C. §1343 and

Plaintiff's Illinois state law claims pursuant to the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367.

4.  Venue is proper in that the employment practices alleged to be unlawful were committed within the Northern District of Illinois.

5.  This is an action for punitive damages in excess of $15,000 exclusive of interest and costs.

### III.   PARTIES

6.  Plaintiff, ELLIOTT PEPPERS, is an African-American male over the age of eighteen (18), a citizen of the State of Illinois, residing in Downers Grove, and employed full-time by Defendant Benedictine, initially as a National Media Coordinator and currently as Associate Director of Media Relations, during the time the acts complained of occurred.

7.  Defendant, BENEDICTINE UNIVERSITY, is a private Roman Catholic university located in Lisle, Illinois. BENEDICTINE UNIVERSITY is a party for the sole purpose of indemnification.

8.  Defendant, MICHAEL S. BROPHY, is a white male over the age of eighteen (18) and a citizen of the State of Illinois. At all times relevant herein since 2015, Defendant MICHAEL S. BROPHY, served in the appointed position of President of Benedictine University, succeeding William J. Carroll and acted in the scope of his employment. Defendant Brophy is sued in his official capacity as Benedictine President.

9.  Defendant, MARCO MASINI, is a white male over the age of eighteen (18) and a citizen of the State of Illinois.  At all relevant times herein Defendant, MARCO

MASINI, served in the capacity of Vice President for Student Life and acted in the scope of his employment. Defendant Masini is sued in his official capacity as Benedictine Vice President for Student Life.

10. Defendant, CHAD TREISCH, is a white male over the age of eighteen (18) and a citizen of the State of Illinois. At all relevant times herein Defendant, CHAD TREISCH, served in the capacity of Executive Director of Facilities Management and Planning and acted in the scope of his employment. Defendant Treisch is sued in his official capacity as Benedictine Executive Director of Facilities Management and Planning.

11. Defendant, HOPE KEBER, is a white female over the age of eighteen (18) and a citizen of the State of Illinois. At all times relevant herein, Defendant, HOPE KEBER, initially served in the capacity of Benedictine Director of Parent Programs and more recently as Benedictine Counselling Center Director. Defendant Keber acted in the scope of her employment and is sued in her official capacity as Benedictine Counseling Center Director.

## IV. FACTUAL ALLEGATIONS OF DISCRIMINATION
## BY PLAINTIFF ELLIOTT PEPPERS

12. Plaintiff began his employment with Defendant Benedictine around July, 2011.

13. Plaintiff has brought a number of complaints of Code of Conduct violations commencing in October, 2013 against named Defendants Teisch and Keber who are fellow staff members of Plaintiff at Defendant Benedictine.

14. Plaintiff initially complained to his employer in September, 2013 that Defendant Teisch, who at that time had an office near Plaintiff, engaged in frequent, disruptive, loud tirades in which he often spoke using crude, offensive language. (See **Exhibit C**, attached hereto.) Sometimes these tirades were directed at other employees, including Plaintiff, and other times they were heard on personal calls where the angry, loud, crude tones were disruptive to the workflow of others, including Plaintiff, in the area.

15. Plaintiff asserts that, although the behavior of Defendant Teisch, violated Defendant Benedictine's Code of Conduct (see **Exhibit D**, attached hereto), Plaintiff's complaints about the disruptive behavior of Defendant Teisch that created an uncomfortable, hostile work environment went unanswered.

16. Plaintiff says he was told an investigation had taken place over the ensuing five (5) months and a report issued, but Plaintiff was never provided a copy of the alleged investigatory report. (See **Exhibit E**, attached, with email chain.)

17. On September 27 2016 at a meeting between Defendant Teisch and Plaintiff's Marketing and Communications staff, Defendant Teisch harangued the group with aggressive, verbally abusive, demeaning, vulgar and derisive language for a lengthy period of time. Staff appeared to be afraid to respond, but Plaintiff called him out on his unprofessional, inappropriate behavior.

18. Plaintiff reported the incident to the Defendant Brophy; Miroslava Mejia Krug, Benedictine Vice President for Administration and Finance and Chief Financial Officer, Nancy Stoecker, Benedictine Chief Compliance Officer and Legal Counsel, and Betsey Rhinesmith, Benedictine Human Resources Director.

19. Plaintiff did not perceive any remediation of this complaint.

20. On January 20, 2017, Defendant Teisch was standing with Plaintiff and another Benedictine employee, while Defendant Teisch complained about a set-up of chairs. Defendant Teisch loudly and angrily exclaimed "I could have measured the chairs better with my dick!".

21. Plaintiff brought this offensive behavior again to the attention of Nancy Stoecker, Defendant Chief Compliance Officer and Legal Counsel, who on March 10, 2017 stated the allegations had been investigated and that it appeared "inappropriate behavior and violations of company policy took place" (See **Exhibit F**, attached hereto.)

22. Defendant Teisch retaliated against Plaintiff and other employees who complained about his behavior by engaging in further lengthy, angry, threatening tirades.

23. As in the past, Defendant Teisch's disruptive, bullying, hostile behavior continues unabated to date.

24. Plaintiff cannot understand the foundation for the fearful attitude the Defendant Benedictine has to properly address the behavior of an officer of the institution who is creating a seriously uncomfortable work environment for so many employees and whose behavior flies dramatically in the face of Defendant Benedictine's Code of Conduct.

25. Plaintiff asserts that, as an African-American man, his employment would have been immediately terminated if he behaved similarly as Defendant Teisch. His complaints are, instead, ignored, which is demeaning, bewildering and disconcerting to Plaintiff.

26. Defendant Keber came into his office in October, 2016 yelling and wagging her finger in his face over an alleged email he sent, which she said embarrassed her before her manager, as it appeared to accuse her of plagiarism.

27. Although he apologized, saying that was not his intent, her volatile behavior continued.

28. Plaintiff followed the Defendant Benedictine rule of bringing the volatile, threatening behavior of Defendant Keber to the attention of her manager, Defendant Marco Masini.

29. Plaintiff says that when he brought the complaint of Defendant Keber's behavior to the attention of her manager, Defendant Masini, his response was to engage in numerous delays to speak with Plaintiff and when they eventually had a face-to-face meeting, Defendant Masini simply laughed at Defendant.

30. Plaintiff felt insulted and demeaned by the response of Defendant Masini, which appeared to condone the behavior of his supervisee.

31. In a staff meeting on March 3, 2017 Plaintiff experienced a yelling tirade from Defendant Megan Benham. Plaintiff indicates her unprofessional behavior and frequent tirades were not only beginning to alienate him and other staff, but potentially threatening participation at an upcoming program.

32. Plaintiff again sought the intervention of Benedictine leadership to address the issue.

33. Plaintiff again failed to obtain satisfactory redress of the problem.

34. Plaintiff wants the Defendants to take this matter seriously and believes that litigation is the only way to get their attention and manage the Benedictine work environment consistent with their express policies and values.

## COUNT I

## RACIAL AND GENDER DISCRIMINATION/ HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

35. Plaintiff adopts by reference and incorporates paragraphs 13 through 30 as if fully set forth herein.

36. Plaintiff is currently employed by Defendant Benedictine.

37. That as an employer within the meaning of Title VII, the Defendant Benedictine owed at all times a duty to Plaintiff not to harass and/or discriminate against him with respect to employment or other conditions or privileges of employment due to his race or gender.

38. Plaintiff is an African-American man and is a member of a protected class entitled to that protection afforded by Title VII.

39. At all times pertinent hereto, Plaintiff was an excellent and dedicated employee highly proficient and in all respects acted in the best interests of his employer.

40. That the race and gender of the Plaintiff was not a term, requirement or condition of employment with Defendant, and Plaintiff's race and gender did not in any way affect his job performance.

41. That during Plaintiff's tenure of employment, he was victimized by each of the Defendants and/or its agents and employees in the following manner:

      (a) Subjected to harassment by co-employees due to race and gender, which was condoned by each of the Defendants and

      (b) Subjected to a racially harassing, hostile and intimidating employment environment.

42. That all of the aforesaid conduct was made known to and complained of to supervisory personnel of the Defendants herein by the Plaintiff.

43. That, despite said complaints, such conduct continued unfettered and no effort was made by management or agents of each of the Defendants, to curtail or otherwise curb and prevent such discriminatory conduct.

44. The conduct by each of the Defendant Benedictine's employees had the purpose and/or effect of substantially interfering with the Plaintiff's employment and/or creating an intimidating, hostile and offensive employment environment.

45. Defendants had both actual and constructive notice that its employees were creating a hostile and offensive work environment for the Plaintiff.

46. Despite having notice of the conduct of its employees and supervisory personnel toward the Plaintiff and other minorities, Defendants failed to take any remedial action.

47. The conduct as set forth above by each of the Defendants' employees and their failure to take remedial action violates Title VII.

## COUNT II

## RACIAL DISCRIMINATION/HARASSMENT IN VIOLATION

## OF 42 U.S.C. SECTION 1981

48. Plaintiff adopts by reference and incorporates paragraphs 13 through 30 as if fully set forth herein.

49. Plaintiff is currently employed by Defendant Benedictine.

50. That as an employer within the meaning of 42 U.S.C. Section 1981, the Defendant Benedictine owed at all times a duty to Plaintiff not to harass and/or discriminate against him with respect to employment or other conditions or privileges of employment due to his race or gender.

51. Plaintiff is an African-American man and is a member of a protected class entitled to that protection afforded by Section 1981.

52. At all times pertinent hereto, Plaintiff was an excellent and dedicated employee highly proficient and in all respects acted in the best interests of his employer.

53. That the race and gender of the Plaintiff was not a term, requirement or condition of employment with Defendant, and Plaintiff's race and gender did not in any way affect his job performance.

54. That during Plaintiff's tenure of employment, he was victimized by each of the Defendants and/or its agents and employees in the following manner:

(c) Subjected to harassment by co-employees due to race and gender, which was condoned by each of the Defendants and

(d) Subjected to a racially harassing, hostile and intimidating employment environment.

55. That all of the aforesaid conduct was made known to and complained of to supervisory personnel of the Defendants herein by the Plaintiff.

56. That, despite said complaints, such conduct continued unfettered and no effort was made by management or agents of each of the Defendants, to curtail or otherwise curb and prevent such discriminatory conduct.

57. The conduct by each of the Defendant Benedictine's employees had the purpose and/or effect of substantially interfering with the Plaintiff's employment and/or creating an intimidating, hostile and offensive employment environment.

58. Defendants had both actual and constructive notice that its employees were creating a hostile and offensive work environment for the Plaintiff.

59. Despite having notice of the conduct of its employees and supervisory personnel toward the Plaintiff and other minorities, Defendants failed to take any remedial action.

60. The conduct as set forth above by each of the Defendants' employees and their failure to take remedial action violates Section 1981.

## COUNT III

## RACIAL DISCRIMINATION/HARASSMENT IN VIOLATION OF

## ILLINOIS CIVIL RIGHTS ACT OF 2006, 740 ILCS 24

61. Plaintiff adopts by reference and incorporates paragraphs 13 through 30 as if fully set forth herein.

62. Plaintiff is currently employed by Defendant Benedictine.

63. That as an employer within the meaning of the Illinois Civil Rights Act of 2006, the Defendant Benedictine owed at all times a duty to Plaintiff not to harass and/or discriminate against him with respect to employment or other conditions or privileges of employment due to his race or gender.

64. Plaintiff is an African-American man and is a member of a protected class entitled to that protection afforded by the Illinois Civil Rights Act of 2006.

65. At all times pertinent hereto, Plaintiff was an excellent and dedicated employee highly proficient and in all respects acted in the best interests of his employer.

66. That the race and gender of the Plaintiff was not a term, requirement or condition of employment with Defendant, and Plaintiff's race and gender did not in any way affect his job performance.

67. That during Plaintiff's tenure of employment, he was victimized by each of the Defendants and/or its agents and employees in the following manner:

    (e) Subjected to harassment by co-employees due to race and gender, which was condoned by each of the Defendants and

    (f) Subjected to a racially harassing, hostile and intimidating employment environment.

68. That all of the aforesaid conduct was made known to and complained of to supervisory personnel of the Defendants herein by the Plaintiff.

69. That, despite said complaints, such conduct continued unfettered and no effort was made by management or agents of each of the Defendants, to curtail or otherwise curb and prevent such discriminatory conduct.

70. The conduct by each of the Defendant Benedictine's employees had the purpose and/or effect of substantially interfering with the Plaintiff's employment and/or creating an intimidating, hostile and offensive employment environment.

71. Defendants had both actual and constructive notice that its employees were creating a hostile and offensive work environment for the Plaintiff.

72. Despite having notice of the conduct of its employees and supervisory personnel toward the Plaintiff and other minorities, Defendants failed to take any remedial action.

73. The conduct as set forth above by each of the Defendants' employees and their failure to take remedial action violates the Illinois Civil Rights Act of 2006.


## PRAYER FOR RELIEF


74. 42 U.S.C. Section 1981 provides, in relevant part, that "all persons ….. shall have the same right….. to make and enforce contracts….. as is enjoyed by white citizens…" The individual Defendants here, acting within the scope of their positions, have intentionally used their managerial positions in this private institution to act in an illegally discriminatory manner resulting in the violation of the federal, constitutional and statutory protected rights of the Plaintiff.  This can

only happen in the presence of a culture and leadership that supports or even endorses this behavior, despite its stated policies and values to the contrary.

75. Plaintiff believes, and based thereon alleges, that the conduct of Defendants described above was done with intent; with a conscious disregard of his rights; and with the intent, design and purpose of injuring him. As such Plaintiff believes that Defendants authorized, condoned and/or ratified the conduct complained of by him. By reason thereof, the Plaintiff is entitled to punitive or exemplary damages from Defendants in a sum according to proof at trial.

76. As a direct and proximate result of Defendants' willful, knowing and intentional conduct and failure to take remedial action against the retaliatory and other conduct, the Plaintiff has suffered and will continue to suffer pain and suffering, severe mental anguish and emotional distress.

77. As further direct and proximate result of each of the Defendants violations as heretofore described, the Plaintiff has been compelled to retain the services of counsel in an effort to enforce federal and state laws prohibiting such conduct, and hence forced to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff. As a result, the Plaintiff request that attorney's fees be awarded pursuant to the above stated statutes.

WHEREFOR, Plaintiff prays that this Court:

a. Declares that the treatment of Plaintiff by Defendants violated Title VII, Section 1981, the Illinois Civil Rights Act of 2006 and Illinois common law for breach of contract;

b. Award Plaintiff punitive or exemplary damages in excess of $15,000 against the Defendants.

c. Award reasonable attorney's fees and costs;

d. Order any other relief that the Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all counts and claims raised by this Complaint.

Dated: May 4, 2017

Respectfully submitted,

Jill M. Willis

Attorney for Plaintiff

Jill M. Willis
Law Office of Jill M. Willis
3628 South King Drive
Chicago, Illinois 60653
(847) 826-5284

# EXHIBITS

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2017-01504 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Elliott Peppers** | **(630) 442-2438** | **1972** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2216 Arbor Circle Apt #3, Downers Grove, IL 60515** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **BENEDICTINE UNIVERSITY** | **500 or More** | **(630) 829-6000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **5700 College Road, Lisle, IL 60532** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| | **01-09-2017** |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with Respondent in or around July 2011. My current position is Associate Director of Media Relations. During my employment I was subjected to harassment. I have complained to no avail.

I believe that I have been discriminated against because of my race, Black, and sex, male, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC
JAN 09 2017
CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Jan 09, 2017**<br>Date   Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Elliott Peppers<br>2216 Arbor Circle Apt #3<br>Downers Grove, IL 60515 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative<br>**Eva Baran,**<br>**Investigator** | | Telephone No. |
| **440-2017-01504** | | | **(312) 869-8023** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____
**Julianne Bowman,**
**District Director**

_____
(Date Mailed)

Enclosures(s)

cc:  **Michael S. Brophy Ph.D., M.F.A.**
**President**
**BENEDICTINE UNIVERSITY**
**5700 College Road**
**Lisle, IL 60532**

Linda, Mercy,

I know firsthand you both have experienced more than your share of confrontational, verbally abusive interactions from partners and those in positions of authority. As such we have learned to deal with it and move on and as such I have done so mostly related to the episode with Hope yesterday. However, because I feel this is not one of those situations and interactions one has to just accept and take, thus, I articulate my grievance as follows:

Double standard.

One part of me has put this issue to rest as one of those things that happens at the work place and tells me to move on, which I have. Yet the other half of me that detests double standards tells me to speak out to properly resolve this issue so that its residue does not continue to fester and foster another negative encounter because there was no true resolution and accountability for inappropriate behavior.

If I had confronted Hope in such a hostile, unprofessional, aggressive, obnoxious manner, I am certain she would have gone to HR complaining she felt threatened and that my tone, accusations and anger made her afraid and created a hostile work environment at which time disciplinary actions would have been put into play against me. Now, though I apologized several times for her feeling embarrassed about her error and contextually framing it in a plagiaristic light, it did not seem to appease her. I admit my final response to Hope was not perfect (but it did cause her to disengage after apologies and stating that we are all here to do the same job and service the students and that mistakes happen did not suffice) but after continued loud, public berating, even the most skilled conflict mediator would be a bit frustrated. At minimal I deserve an apology for the entire episode was unprofessional, rude and very hostile. Could I have done more to diffuse the terse situation. That is always possible, but teaching someone from another department how not to behave in the workplace is not a core responsibility and I should not be made to feel I have to cuddle to someone else's insecurities and expect abuse if a communication is not perfectly made to them. For me, that creates a hostile work environment of which I have the right to come to work free of.

I would like this issue put to bed appropriately and not just ignored, dismissed as if it never happened. Not doing so means there is no accountability for inappropriate behavior and the expectation and likelihood of a repeat reoccurrence is increased in possible future encounters which are required to get the job done that we are here to do.

Elliott

**Elliott Peppers**
Media Relations Manager

2013 Official University Complaint for Employee Misconduct

Results: Complaint was ultimately ignored. I received no official response from the University after filing my misconduct complaint, being interviewed by HR and Compliance officers who also interviewed numerous other staff who witnessed the incident. Each request for status of my complaint was met with a response that they were still investigating until I eventually gave up on hope for receiving any response or action on the behalf of the University. I felt discriminated against but could do nothing because I believed if I continued to complain that within this volatile environment I would lose my job, knowing that in an at-will state like Illinois, an employer does not have to give a reason for terminating you.

See the email correspondence below for history on this initial formal complaint, which is support of my overall case of the systemic and history of discriminatory practices by the University against me and other minorities and women.

**From:** Robb, Mercedes
**Sent:** Thursday, October 17, 2013 5:02 PM
**To:** Peppers, Elliott E.; Hale, Linda
**Subject:** RE: conduct

Elliott,


I apologize that I have not yet had the opportunity to discuss what happened yesterday with Marco. However, I will.



Mercy


Mercy Robb
Executive Director of Marketing and Communications
Benedictine University
5700 College Road
Lisle, Illinois 60532
(630) 829-6095
mrobb@ben.edu
www.ben.edu

**From:** Peppers, Elliott E.
**Sent:** Thursday, October 17, 2013 4:34 PM
**To:** Hale, Linda
**Cc:** Robb, Mercedes
**Subject:** conduct

**From:** Robb, Mercedes
**Sent:** Thursday, October 17, 2013 5:02 PM
**To:** Peppers, Elliott E.; Hale, Linda
**Subject:** RE: conduct

Elliott,


I apologize that I have not yet had the opportunity to discuss what happened yesterday with Marco. However, I will.


Mercy


Mercy Robb
Executive Director of Marketing and Communications
Benedictine University
5700 College Road
Lisle, Illinois 60532
(630) 829-6095
mrobb@ben.edu
www.ben.edu

**From:** Peppers, Elliott E.
**Sent:** Thursday, October 17, 2013 4:34 PM
**To:** Hale, Linda
**Cc:** Robb, Mercedes
**Subject:** conduct

Linda, Mercy,


I know firsthand you both have experienced more than your share of confrontational, verbally abusive interactions from partners and those in positions of authority. As such we have learned to deal with it and move on and as such I have done so mostly related to the episode with Hope yesterday. However, because I feel this is not one of those situations and interactions one has to just accept and take, thus, I articulate my grievance as follows:


Double standard.

**Benedictine University**
**5700 College Road**
**Lisle, Illinois 60532**
(630) 829-6079
(630) 442-2438 (mobile)
epeppers@ben.edu
**twitter: @BenUElliott**
http://www.ben.edu/

Watch Benedictine University's newest video and see how we Defy Average!
http://www.ben.edu/defyvideo



**From:** Robb, Mercedes
**Sent:** Thursday, October 17, 2013 5:17 PM
**To:** Peppers, Elliott E.; Hale, Linda
**Subject:** RE: conduct

I have spoken with Marco. Hope is out tomorrow and after he speaks with her he will contact me for follow up on this.

Mercy

Mercy Robb
Executive Director of Marketing and Communications
Benedictine University
5700 College Road
Lisle, Illinois 60532
(630) 829-6095
mrobb@ben.edu
www.ben.edu

**From:** Peppers, Elliott E.
**Sent:** Thursday, October 17, 2013 5:03 PM
**To:** Robb, Mercedes; Hale, Linda
**Subject:** RE: conduct

Thank you.

**From:** Masini, Marco
**Sent:** Sunday, October 20, 2013 8:05 PM
**To:** Peppers, Elliott E.
**Subject:** Follow Up

Elliott:

Mercy informed me of the conversation that occurred last week with Hope.  I would like to further discuss this with you. Thank you

***Family Weekend*** October 25-27



Join us for a weekend of fun with the entire Benedictine Community at this years Family Weekend. Enjoy tailgating with the Eagle Club before the BenU Football game against Wisconsin-Lutheran College, take a tour of the Fr. Michael Komechak, O.S.B, Art Gallery, and participate in the Cindy Cebrzynski Memorial 5K Fun Run/Walk.

*Click here for more information.*

-----Original Message-----
From: Masini, Marco
Sent: Wednesday, October 23, 2013 7:38 AM
To: Peppers, Elliott E.
Subject: Follow Up

Elliott

Thank you for addressing the matter with Hope.  I have spoken with Hope and plan to coordinate a meeting next week.  Thank you again

-----Original Message-----
From: Masini, Marco
Sent: Wednesday, October 23, 2013 7:38 AM
To: Peppers, Elliott E.
Subject: Follow Up

Elliott

Thank you for addressing the matter with Hope. I have spoken with Hope and plan to coordinate a meeting next week. Thank you again

For Benedictine University
Vice President for Student Life

Marco Masini


**From:** Stoecker, Nancy W.
**Sent:** Friday, November 01, 2013 1:48 PM
**To:** Peppers, Elliott E.; Rhinesmith, Betsy
**Cc:** Robb, Mercedes; Hale, Linda; Masini, Marco
**Subject:** RE: Code of Conduct violation complaint


Elliott,

This will acknowledge receipt of your email. The University takes seriously, allegations of employee misconduct. We have already begun our investigation. Please do not discuss the incident(s) with anyone other than Betsy or me. I will be scheduling an interview with you in the next week or so.


*Nancy West Stoecker, Esq.*
Compliance Officer/Director of Internal Audit
Benedictine University
201 Lownik Hall
5700 College Road
Lisle, Illinois 60532-0900
tel: 630.829.6402
cell:630.432.3220
fax: 630.829.6348
email: **nstoecker@ben.edu**

*"Humility is not thinking less of yourself, it's thinking of yourself less"*
*~C. S. Lewis~*

For Benedictine University
Vice President for Student Life

Marco Masini

-----Original Message-----
From: Masini, Marco
Sent: Tuesday, October 29, 2013 5:53 PM
To: Peppers, Elliott E.
Cc: Hale, Linda; Robb, Mercedes
Subject: RE: Follow Up

Elliott:

My apologies for not following up, Hope was out of the office these past two days.  I will get a date and
time tomorrow.  Thank you

Marco Masini

For Benedictine University
Vice President for Student Life
The Woodrow Wilson Visiting Fellows - Kathleen Kennedy Townsend Tuesday, October 29
7:00 p.m.
Scholl Hall, Room 101
The Woodrow Wilson Visiting Fellows program hosts the former lieutenant governor of Maryland and
U.S. deputy assistant attorney general, who will present "Get in the Bullring: How You Can Make a
Difference" on Tuesday, October 29. The presentation is free and open to the public.

-----Original Message-----
From: Peppers, Elliott E.
Sent: Tuesday, October 29, 2013 5:15 PM
To: Masini, Marco
Cc: Hale, Linda; Robb, Mercedes
Subject: RE: Follow Up

Hi, Marco. I know we all have much greater priorities and workloads to address. However, can you give
me a status update on when we would be meeting to resolve this issue from a few weeks ago? My
concern is additional delays in addressing and finding final resolution greatly minimizes the seriousness
of the aforementioned behavior and devalues the professional environment we all must be accountable
for maintaining.

Regards,
Elliott

**D**

**From:** Peppers, Elliott E.
**Sent:** Thursday, October 31, 2013 4:58 PM
**To:** Rhinesmith, Betsy; Stoecker, Nancy W.
**Cc:** Robb, Mercedes; Hale, Linda; Masini, Marco
**Subject:** Code of Conduct violation complaint

A few weeks ago I was accosted in a demeaning, angry, threatening, very loud, finger-pointing in my face, and verbally abusive manner by Hope Keber within my workspace after she felt embarrassed by an error she made that I pointed out in information she submitted to Marcom for review.

I have followed Personnel Resources and Compliance procedures for contacting my supervisor, senior manager and the senior manager of the party in question (Hope Keber) and awaited patiently over the past two-plus weeks to get some sort of resolution for the incident but to date, no resolution has come.

I do not feel comfortable interacting with Hope since this incident because there has been no timely resolution.

Thus, I am filing an official complaint for a Code of Conduct violation against Hope Keber and requesting an investigation by Personnel Resources and Compliance. I believe I have a right to work in a workplace free of aggressive, intimidating and verbally abusive behavior.

Per the Personnel Resources Handbook and Compliance excerpts:

We believe our employees are responsible, mature and capable of conducting themselves in a manner that reflects credit to them and to Benedictine University as well. Anytime expected standards of conduct are not met, corrective action could range from coaching to termination of employment.

The aforementioned episode was so volatile that it falls within the highlighted precepts of Personnel Resources "Workplace Violence" listing:

Workplace Violence

Because safety in the workplace is very important, threats, implied threats, threatening

**From:** Masini, Marco
**Sent:** Friday, November 01, 2013 4:25 PM
**To:** Peppers, Elliott E.
**Cc:** Robb, Mercedes; Hale, Linda; Rhinesmith, Betsy; Stoecker, Nancy W.
**Subject:** RE: Code of Conduct violation complaint

Elliott:

I appreciated your time as we walked back from University Services meeting. My apologies for not moving quicker in getting a meeting with you, Hope and I. I have spoken with Hope several times and addressed her actions. You shared the desire to continue the process with Personnel Resources and Compliance. Feel free to speak with me any time. Thank you

Marco Masini

For Benedictine University

Vice President for Student Life

**From:** Peppers, Elliott E.
**Sent:** Thursday, October 31, 2013 4:58 PM
**To:** Rhinesmith, Betsy; Stoecker, Nancy W.
**Cc:** Robb, Mercedes; Hale, Linda; Masini, Marco
**Subject:** Code of Conduct violation complaint


A few weeks ago I was accosted in a demeaning, angry, threatening, very loud, finger-pointing in my face, and verbally abusive manner by Hope Keber within my workspace after she felt embarrassed by an error she made that I pointed out in information she submitted to Marcom for review.


I have followed Personnel Resources and Compliance procedures for contacting my supervisor, senior manager and the senior manager of the party in question (Hope Keber) and awaited patiently over the past two-plus weeks to get some sort of resolution for the incident but to date, no resolution has come.


I do not feel comfortable interacting with Hope since this incident because there has been no timely resolution.


Thus, I am filing an official complaint for a Code of Conduct violation against Hope Keber and requesting an investigation by Personnel Resources and Compliance. I believe I have a right to work in a workplace free of aggressive, intimidating and verbally abusive behavior.

behavior, acts of violence, possession of a dangerous or deadly weapon or any related

conduct that is disruptive will not be tolerated. Contact the Benedictine University

Police at extension 6666 or 911 in an emergency.


I am requesting Personnel Resources and Compliance research this matter, conduct staff interviews, and help bring this matter to proper resolution. Witnesses include Karon Miller Ringgenberg, Jordan Freeman, Cheryl Rossetti. Linda Hale has stated she could hear Hope's tirade from her office.


I look forward to your response.


Regards,

Elliott


**Elliott Peppers**
Media Relations Manager
**Benedictine University**
**5700 College Road**
**Lisle, Illinois 60532**
(630) 829-6079
(630) 442-2438 (mobile)
epeppers@ben.edu
**twitter: @BenUElliott**
http://www.ben.edu/

to speak to Marco about this behavior. And she said very loudly as she waved her hand and walked away, "Go ahead!"


Elliott


**From:** Stoecker, Nancy W.
**Sent:** Wednesday, November 06, 2013 10:34 AM
**To:** Peppers, Elliott E.
**Cc:** Rhinesmith, Betsy
**Subject:** Confidential matter


Elliott, I understand that an email preceded the incident described in your email to me. Would you kindly forward to Betsy and me a copy of that email and any others you think are relevant---before our meeting tomorrow?


Thank you


*Nancy West Stoecker, Esq.*
Compliance Officer/Director of Internal Audit
Benedictine University
201 Lownik Hall
5700 College Road
Lisle, Illinois 60532-0900
tel: 630.829.6402
cell:630.432.3220
fax: 630.829.6348
email: **nstoecker@ben.edu**

*"Humility is not thinking less of yourself, it's thinking of yourself less"*
*~C. S. Lewis~*

**From:** Peppers, Elliott E.
**Sent:** Thursday, November 07, 2013 11:07 AM
**To:** Stoecker, Nancy W.
**Cc:** Rhinesmith, Betsy
**Subject:** RE: Confidential matter

Statement:

In summary,

After coming back to my desk from a staff meeting, Hope Keber came over to my desk and within my workspace paraphrasing, "Elliott, can I talk to you about that email. I am really upset."

As she said this she pulled over the black chair that I keep in my workspace and sat down next to me and leaned in very close to me with her finger in my face and said "How dare you accuse me of plagiarism! I have degrees in psychology… You embarrassed me! Why didn't you come over and talk to me!?" When I tried to interject saying, "Listen, Hope." She immediately interrupted and said very loudly and aggressive, "No, you listen!" Again, finger pointing in my face. "My boss was on that email! I was embarrassed!"

I then said several times that I apologize if she felt embarrassed. That was not my intent and that she already said it was a mistake and that we all make mistakes and are here to do the same job and serve the University and its students, but seemed not to hear this and continued on saying in very loud, animated manner things like "My boss was on that email! I was embarrassed!" As a point of process, managers are copied on emails to keep them informed of project status' and to be able to add any necessary information to resolve questions.

I said to Hope that she should have calmed down before she came over to talk with me about this and she responded very loudly, "I am calm!" Trying to diffuse the situation, I asked her where the errant content came from. Did she submit it? She responded loudly, "Yes! I was doing research!" I indicated that in the future it would help to be a bit more detailed oriented to ensure items being researched don't end up in the information submitted to Marcom for review and publication. She then jumped up out of the chair yelling "So it's my fault!" I then said. "Hope, your tone and behavior is inappropriate." And she said loudly, "Now you know what it feels like to be embarrassed!" I said to her that I may have

One part of me has put this issue to rest as one of those things that happens at the work place and tells me to move on, which I have. Yet the other half of me that detests double standards tells me to speak out to properly resolve this issue so that its residue does not continue to fester and foster another negative encounter because there was no true resolution and accountability for inappropriate behavior.

If I had confronted Hope in such a hostile, unprofessional, aggressive, obnoxious manner, I am certain she would have gone to HR complaining she felt threatened and that my tone, accusations and anger made her afraid and created a hostile work environment at which time disciplinary actions would have been put into play against me. Now, though I apologized several times for her feeling embarrassed about her error and contextually framing it in a plagiaristic light, it did not seem to appease her. I admit my final response to Hope was not perfect (but it did cause her to disengage after apologies and stating that we are all here to do the same job and service the students and that mistakes happen did not suffice) but after continued loud, public berating, even the most skilled conflict mediator would be a bit frustrated. At minimal I deserve an apology for the entire episode was unprofessional, rude and very hostile. Could I have done more to diffuse the terse situation. That is always possible, but teaching someone from another department how not to behave in the workplace is not a core responsibility and I should not be made to feel I have to cuddle to someone else's insecurities and expect abuse if a communication is not perfectly made to them. For me, that creates a hostile work environment of which I have the right to come to work free of.

I would like this issue put to bed appropriately and not just ignored, dismissed as if it never happened. Not doing so means there is no accountability for inappropriate behavior and the expectation and likelihood of a repeat reoccurrence is increased in possible future encounters which are required to get the job done that we are here to do.

Elliott
**Elliott Peppers**
Media Relations Manager
**Benedictine University**
**5700 College Road**
**Lisle, Illinois 60532**
(630) 829-6079
(630) 442-2438 (mobile)
**epeppers@ben.edu**
**twitter: @BenUElliott**
http://www.ben.edu/

**From:** Rhinesmith, Betsy
**Sent:** Tuesday, December 10, 2013 2:35 PM
**To:** Peppers, Elliott E.; Stoecker, Nancy W.
**Subject:** RE: Confidential matter

Elliott,

Thank you for your email. We are currently writing the report and will get back to you as soon as possible thereafter. Thank you again and have a good day,

Betsy

**From:** Peppers, Elliott E.
**Sent:** Tuesday, December 10, 2013 2:23 PM
**To:** Rhinesmith, Betsy; Stoecker, Nancy W.
**Subject:** RE: Confidential matter

Good afternoon.

I have not heard from either of you on this matter since my interview with you on November 7. Are you able to provide me a status update?

Thank you.

Regards,

Elliott

**From:** Rhinesmith, Betsy
**Sent:** Thursday, November 07, 2013 12:11 PM
**To:** Peppers, Elliott E.; Stoecker, Nancy W.
**Subject:** RE: Confidential matter

Thank you, Elliott,

Betsy

Per the Personnel Resources Handbook and Compliance excerpts:

We believe our employees are responsible, mature and capable of conducting themselves in a manner that reflects credit to them and to Benedictine University as well. Anytime expected standards of conduct are not met, corrective action could range from coaching to termination of employment.

The aforementioned episode was so volatile that it falls within the highlighted precepts of Personnel Resources "Workplace Violence" listing:

Workplace Violence

Because safety in the workplace is very important, threats, implied threats, threatening

behavior, acts of violence, possession of a dangerous or deadly weapon or any related

conduct that is disruptive will not be tolerated. Contact the Benedictine University

Police at extension 6666 or 911 in an emergency.

I am requesting Personnel Resources and Compliance research this matter, conduct staff interviews, and help bring this matter to proper resolution. Witnesses include Karon Miller Ringgenberg, Jordan Freeman, Cheryl Rossetti. Linda Hale has stated she could hear Hope's tirade from her office.

I look forward to your response.

Regards,

Elliott

**Elliott Peppers**
Media Relations Manager
**Benedictine University**
**5700 College Road**
**Lisle, Illinois 60532**
(630) 829-6079

In a November 2015 meeting with Mercy and other senior MarCom members, I expressed to Mercy that there is no accountability for his (Chad's) behavior and it's so hypocritical for leaders at BenU to promote values when internal conduct like this is consistently allowed. Mercy expressed at that time that she knows that the MarCom staff is disappointed in how she has handled "the Chad situation," as she called it but didn't know what else she could do because she was afraid of him, to quote, "afraid of what he might do." And I stand by this statement by Mercy in November which was witnessed and I am prepared to repeat it in a court of law.

This clearly indicates to me that Mercy feels threatened by Chad and as a result is unable to effectively protect herself and others under her charge because of this perceived threat. She has clearly been intimidated by him, which is very similar to abusive relationships. In fact, not long after Tuesday's incident, I and other MarCom staff members went to Mercy's office for a 2:30 p.m. Mesa meeting, only to find Mercy's door closed but could hear Chad in a raised voice talking to Mercy. This lasted for about an hour and we never met for our Mesa meeting.

God be with you both during this process. I thank you.

**Requested copies of my notes taken during the meeting of the incident:**

**From:** Peppers, Elliott E.
**Sent:** Tuesday, September 27, 2016 3:06 PM
**To:** Rhinesmith, Betsy; Brophy, Michael
**Cc:** Hale, Linda; Robb, Mercedes
**Subject:** Unacceptable abusive conduct creating and sustaining a hostile work environment at Benedictine
**Importance:** High

I, and the entire Marketing and Communications staff, was shocked at the unprofessional, verbally abusive, derisive and attacking conduct by Chad Treisch during our meeting today to discuss our workspace redesign.

Chad became very aggressive, verbally abusive, derisive and unprofessional to Mercy and the entire MarCom staff, essentially yelling at us after he was upset the Naperville Operational Center was warm and the facilities worker's (Kevin) response to Mercy about the warmth in the building being related to the sun was not acceptable, and MarCom staff members laughing at Kevin's response was taken as a personal attack on him. He continued for several minutes to berate Mercy and the MarCom staff for not following University protocol to put in service requests. The conversation between Mercy and Kevin had only happened moments before the meeting.

I spoke up stating that I was not going to sit here quietly and let him verbally abuse the entire MarCom staff and Mercy directly with his very unacceptable, unprofessional conduct. He persisted with this behavior in front of all MarCom and his own staff (Annie and Pam). Trying to bring the conversation back to something resembling a professional meeting with a senior leader at the University, I provided Chad an example where I spoke to Kevin to have lighting adjusted when we first arrive in the Naperville Operational Center while also putting in a proper service request, which was responded to nearly four weeks later inquiring if it was still needed after being resolved in less than 24 hours of my verbal request to Kevin.

Chad persisted with his angry tirade even as Mercy tried to calmly alleviate his concerns, stating over and over that that was what Kevin said and no one was undermining the work system and or him, further stating that we have come to expect climate issues with the building. Mercy tried desperately to get back to the purpose of the meeting as Chad angrily threw about his accusations.

My expectations are that no one at the University has the right to be intentionally abusive, demeaning and aggressive with other members of the community at any time. I expect the University to immediately and decisively address this persistent, pervasive longtime conduct by Chad who has consistently behaved in this manner for years with little to no accountability.

For example, within the last year, I am aware of a situation where I overheard Chad aggressively yelling and verbally abusing Mercy in her office **for nearly two hours** after other staff members had complained about his vulgar language and conduct in and around his office and at times during meetings.

The law provides certain protections against workplace abuses which clearly contribute to a hostile work environment. This falls under the federal employment harassment guidelines:
https://www.eeoc.gov/laws/types/harassment.cfm

**From:** Krug, Miroslava M.
**Sent:** Wednesday, September 28, 2016 8:30 AM
**To:** Peppers, Elliott E.
**Subject:** RE: Unacceptable abusive conduct creating and sustaining a hostile work environment at Benedictine

Thanks for letting me know Elliott. We take employee concerns very seriously. We will review and get back to you as soon as possible.

Miroslava Mejia Krug
Vice President for Administration and
Finance and Chief Financial Officer
Benedictine University
mmkrug@ben.edu
Phone: 630-829-6418
www.ben.edu



**From:** Peppers, Elliott E.
**Sent:** Tuesday, September 27, 2016 3:44 PM
**To:** Krug, Miroslava M. <mmkrug@ben.edu>
**Subject:** FW: Unacceptable abusive conduct creating and sustaining a hostile work environment at Benedictine
**Importance:** High

I apologize for not including you on this initial communication as I forgot this area now reports to you. Fyi,

Elliott

**Elliott Peppers**
Associate Director of Media Relations
**Benedictine University**
**5700 College Road**
**Lisle, Illinois 60532**
(630) 829-6079
(630) 442-2438 (mobile)
epeppers@ben.edu
**twitter: @BenUElliott**
www.ben.edu/newsroom

# Harassment

Harassment is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA).

Harassment is unwelcome conduct that is based on race, color, religion, sex (including pregnancy), national origin, age (40 or older), disability or genetic information. Harassment becomes unlawful where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. Anti-discrimination laws also prohibit harassment against individuals in retaliation for filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or lawsuit under these laws; or opposing employment practices that they reasonably believe discriminate against individuals, in violation of these laws.

Petty slights, annoyances, and isolated incidents (unless extremely serious) will not rise to the level of illegality. To be unlawful, the conduct must create a work environment that would be intimidating, hostile, or offensive to reasonable people.

Offensive conduct may include, but is not limited to, offensive jokes, slurs, epithets or name calling, physical assaults or threats, intimidation, ridicule or mockery, insults or put-downs, offensive objects or pictures, and interference with work performance. Harassment can occur in a variety of circumstances, including, but not limited to, the following:

- The harasser can be the victim's supervisor, a supervisor in another area, an agent of the employer, a co-worker, or a non-employee.

- The victim does not have to be the person harassed, but can be anyone affected by the offensive conduct.

- Unlawful harassment may occur without economic injury to, or discharge of, the victim.

Prevention is the best tool to eliminate harassment in the workplace. Employers are encouraged to take appropriate steps to prevent and correct unlawful harassment. They should clearly communicate to employees that unwelcome harassing conduct will not be tolerated. They can do this by establishing an effective complaint or grievance process, providing anti-harassment training to their managers and employees, and taking immediate and appropriate action when an employee complains. Employers should strive to create an environment in which employees feel free to raise concerns and are confident that those concerns will be addressed.

Employees are encouraged to inform the harasser directly that the conduct is unwelcome and must stop. Employees should also report harassment to management at an early stage to prevent its escalation.

# Employer Liability for Harassment

The employer is automatically liable for harassment by a supervisor that results in a negative employment action such as termination, failure to promote or hire, and loss of wages. If the supervisor's harassment results in a hostile work environment, the employer can avoid liability only if it can prove that: 1) it reasonably tried to prevent and promptly correct the harassing behavior; and 2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.

The employer will be liable for harassment by non-supervisory employees or non-employees over whom it has control (e.g., independent contractors or customers on the premises), if it knew, or should have known about the harassment and failed to take prompt and appropriate corrective action.

When investigating allegations of harassment, the EEOC looks at the entire record: including the nature of the conduct, and the context in which the alleged incidents occurred. A determination of whether harassment is severe or pervasive enough to be illegal is made on a case-by-case basis.

If you believe that the harassment you are experiencing or witnessing is of a specifically sexual nature, you may want to see EEOC's information on sexual harassment.

My expectation is for Benedictine University to <u>follow the law and to take this pervasive situation seriously</u>, least outside state and federal agencies need to investigate in order for proper remedies to be enacted. Today's action by Chad Treisch is consistent with his longtime pattern of abusive behaviors within the workplace toward other University employees that have continued largely unchallenged with little evidence of self-correction or University intervention. Every member of the MarCom staff present for today's meeting and Chad's staff was witness to this shocking, abusive behavior.

Please advise on what you and the University plan to do to address this long-term pattern of abuses by Chad Treisch toward other University employees. Chad's abuses have become so commonplace that it is just accepted and expected to come depending on his mood, and contrary to our moral rights as Catholic and Benedictine's, and our legal rights as American citizens.

I look forward to your prompt reply.
Sincerely,
Elliott

**Elliott Peppers**
Associate Director of Media Relations
**Benedictine University**
**5700 College Road**
**Lisle, Illinois 60532**
(630) 829-6079
(630) 442-2438 (mobile)
epeppers@ben.edu
**twitter: @BenUElliott**
www.ben.edu/newsroom

# Initial complaint to University President Michael S. Brophy and HR director Betsy Rhinesmith:

**From:** Brophy, Michael
**Sent:** Tuesday, September 27, 2016 3:44 PM
**To:** Peppers, Elliott E.; Rhinesmith, Betsy
**Cc:** Hale, Linda; Robb, Mercedes
**Subject:** Re: Unacceptable abusive conduct creating and sustaining a hostile work environment at Benedictine

Greetings, Elliott

The University will review and consider your communication as soon as possible. We take your concerns seriously.

Regards,

Michael Brophy, PhD, MFA
President of Benedictine University

**From:** "Peppers, Elliott E."
**Date:** Tuesday, September 27, 2016 at 3:06 PM
**To:** "Rhinesmith, Betsy", "Brophy, Michael"
**Cc:** "Hale, Linda", "Robb, Mercedes"
**Subject:** Unacceptable abusive conduct creating and sustaining a hostile work environment at Benedictine

I, and the entire Marketing and Communications staff, was shocked at the unprofessional, verbally abusive, derisive and attacking conduct by Chad Treisch during our meeting today to discuss our workspace redesign.

Chad became very aggressive, verbally abusive, derisive and unprofessional to Mercy and the entire MarCom staff, essentially yelling at us after he was upset the Naperville Operational Center was warm and the facilities worker's (Kevin) response to Mercy about the warmth in the building being related to the sun was not acceptable, and MarCom staff members laughing at Kevin's response was taken as a personal attack on him. He continued for several minutes to berate Mercy and the MarCom staff for not following University protocol to put in service requests. The conversation between Mercy and Kevin had only happened moments before the meeting.

I spoke up stating that I was not going to sit here quietly and let him verbally abuse the entire MarCom staff and Mercy directly with his very unacceptable, unprofessional conduct. He persisted with this behavior in front of all MarCom and his own staff (Annie and Pam). Trying to bring the conversation back to something resembling a professional meeting with a senior leader at the University, I provided Chad

an example where I spoke to Kevin to have lighting adjusted when we first arrive in the Naperville Operational Center while also putting in a proper service request, which was responded to nearly four weeks later inquiring if it was still needed after being resolved in less than 24 hours of my verbal request to Kevin.

Chad persisted with his angry tirade even as Mercy tried to calmly alleviate his concerns, stating over and over that that was what Kevin said and no one was undermining the work system and or him, further stating that we have come to expect climate issues with the building. Mercy tried desperately to get back to the purpose of the meeting as Chad angrily threw about his accusations.

My expectations are that no one at the University has the right to be intentionally abusive, demeaning and aggressive with other members of the community at any time. I expect the University to immediately and decisively address this persistent, pervasive longtime conduct by Chad who has consistently behaved in this manner for years with little to no accountability.

For example, within the last year, I am aware of a situation where I overheard Chad aggressively yelling and verbally abusing Mercy in her office **for nearly two hours** after other staff members had complained about his vulgar language and conduct in and around his office and at times during meetings.

The law provides certain protections against workplace abuses which clearly contribute to a hostile work environment. This falls under the federal employment harassment guidelines:
https://www.eeoc.gov/laws/types/harassment.cfm

# Harassment

Harassment is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA).

Harassment is unwelcome conduct that is based on race, color, religion, sex (including pregnancy), national origin, age (40 or older), disability or genetic information. Harassment becomes unlawful where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. Anti-discrimination laws also prohibit harassment against individuals in retaliation for filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or lawsuit under these laws; or opposing employment practices that they reasonably believe discriminate against individuals, in violation of these laws.

Petty slights, annoyances, and isolated incidents (unless extremely serious) will not rise to the level of illegality. To be unlawful, the conduct must create a work environment that would be intimidating, hostile, or offensive to reasonable people.

Offensive conduct may include, but is not limited to, offensive jokes, slurs, epithets or name calling, physical assaults or threats, intimidation, ridicule or mockery, insults or put-downs, offensive objects or pictures, and interference with work performance. Harassment can occur in a variety of circumstances, including, but not limited to, the following:

- The harasser can be the victim's supervisor, a supervisor in another area, an agent of the employer, a co-worker, or a non-employee.

- The victim does not have to be the person harassed, but can be anyone affected by the offensive conduct.

(630) 442-2438 (mobile)
epeppers@ben.edu
**twitter: @BenUElliott**
www.ben.edu/newsroom

# University responses:

**From:** Rhinesmith, Betsy
**Sent:** Tuesday, September 27, 2016 3:46 PM
**To:** Peppers, Elliott E.; Brophy, Michael
**Cc:** Hale, Linda; Robb, Mercedes
**Subject:** RE: Unacceptable abusive conduct creating and sustaining a hostile work environment at
Benedictine

Elliott,

Thank you for your email.  The University takes complaints of harassment seriously.  I have also
informed Nancy Stoecker in our Compliance Department and we will respond to you shortly about your
concerns.  Thank you,

Betsy

**From:** Peppers, Elliott E.
**Sent:** Tuesday, September 27, 2016 3:06 PM
**To:** Rhinesmith, Betsy; Brophy, Michael
**Cc:** Hale, Linda; Robb, Mercedes
**Subject:** Unacceptable abusive conduct creating and sustaining a hostile work environment at
Benedictine
**Importance:** High

I, and the entire Marketing and Communications staff, was shocked at the unprofessional, verbally
abusive, derisive and attacking conduct by Chad Treisch during our meeting today to discuss our
workspace redesign.

Chad became very aggressive, verbally abusive, derisive and unprofessional to Mercy and the entire
MarCom staff, essentially yelling at us after he was upset the Naperville Operational Center was warm
and the facilities worker's (Kevin) response to Mercy about the warmth in the building being related to
the sun was not acceptable, and MarCom staff members laughing at Kevin's response was taken as a
personal attack on him. He continued for several minutes to berate Mercy and the MarCom staff for not
following University protocol to put in service requests. The conversation between Mercy and Kevin had
only happened moments before the meeting.

I spoke up stating that I was not going to sit here quietly and let him verbally abuse the entire MarCom
staff and Mercy directly with his very unacceptable, unprofessional conduct. He persisted with this
behavior in front of all MarCom and his own staff (Annie and Pam). Trying to bring the conversation back
to something resembling a professional meeting with a senior leader at the University, I provided Chad
an example where I spoke to Kevin to have lighting adjusted when we first arrive in the Naperville

Elliott

**Elliott Peppers**
Associate Director of Media Relations
**Benedictine University**
**5700 College Road**
**Lisle, Illinois 60532**
(630) 829-6079
(630) 442-2438 (mobile)
epeppers@ben.edu
twitter: @BenUElliott
www.ben.edu/newsroom

**From:** Rhinesmith, Betsy
**Sent:** Monday, October 03, 2016 5:51 PM
**To:** Peppers, Elliott E.; Stoecker, Nancy W.
**Subject:** RE: Confidential Matter Follow Up

Elliott, thank you,
Betsy

**From:** Peppers, Elliott E.
**Sent:** Monday, October 03, 2016 2:38 PM
**To:** Rhinesmith, Betsy; Stoecker, Nancy W.
**Subject:** Confidential Matter Follow Up

Per your request, please find the supplemental information I presented during my interview on Friday as well as the notes taken directly after the incident.

Please advise if you need anything further.

Elliott

**Elliott Peppers**
Associate Director of Media Relations
**Benedictine University**
**5700 College Road**
**Lisle, Illinois 60532**
(630) 829-6079
(630) 442-2438 (mobile)
epeppers@ben.edu
twitter: @BenUElliott
www.ben.edu/newsroom

- Unlawful harassment may occur without economic injury to, or discharge of, the victim.

Prevention is the best tool to eliminate harassment in the workplace. Employers are encouraged to take appropriate steps to prevent and correct unlawful harassment. They should clearly communicate to employees that unwelcome harassing conduct will not be tolerated. They can do this by establishing an effective complaint or grievance process, providing anti-harassment training to their managers and employees, and taking immediate and appropriate action when an employee complains. Employers should strive to create an environment in which employees feel free to raise concerns and are confident that those concerns will be addressed.

Employees are encouraged to inform the harasser directly that the conduct is unwelcome and must stop. Employees should also report harassment to management at an early stage to prevent its escalation.

# Employer Liability for Harassment

The employer is automatically liable for harassment by a supervisor that results in a negative employment action such as termination, failure to promote or hire, and loss of wages. If the supervisor's harassment results in a hostile work environment, the employer can avoid liability only if it can prove that: 1) it reasonably tried to prevent and promptly correct the harassing behavior; and 2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.

The employer will be liable for harassment by non-supervisory employees or non-employees over whom it has control (e.g., independent contractors or customers on the premises), if it knew, or should have known about the harassment and failed to take prompt and appropriate corrective action.

When investigating allegations of harassment, the EEOC looks at the entire record: including the nature of the conduct, and the context in which the alleged incidents occurred. A determination of whether harassment is severe or pervasive enough to be illegal is made on a case-by-case basis.

If you believe that the harassment you are experiencing or witnessing is of a specifically sexual nature, you may want to see EEOC's information on sexual harassment.

My expectation is for Benedictine University to follow the law and to take this pervasive situation seriously, least outside state and federal agencies need to investigate in order for proper remedies to be enacted. Today's action by Chad Treisch is consistent with his longtime pattern of abusive behaviors within the workplace toward other University employees that have continued largely unchallenged with little evidence of self-correction or University intervention. Every member of the MarCom staff present for today's meeting and Chad's staff was witness to this shocking, abusive behavior.

Please advise on what you and the University plan to do to address this long-term pattern of abuses by Chad Treisch toward other University employees. Chad's abuses have become so commonplace that it is just accepted and expected to come depending on his mood, and contrary to our moral rights as Catholic and Benedictine's, and our legal rights as American citizens.

I look forward to your prompt reply.
Sincerely,
Elliott

**Elliott Peppers**
Associate Director of Media Relations
**Benedictine University**
**5700 College Road**
**Lisle, Illinois 60532**
(630) 829-6079

## Supplemental information provide to University officials:

**From:** Peppers, Elliott E.
**Sent:** Monday, October 03, 2016 2:38 PM
**To:** Rhinesmith, Betsy; Stoecker, Nancy W.
**Subject:** Confidential Matter Follow Up

Per your request, please find the supplemental information I presented during my interview on Friday as well as the notes taken directly after the incident.

Please advise if you need anything further.

Elliott

**Elliott Peppers**
Associate Director of Media Relations
**Benedictine University**
5700 College Road
Lisle, Illinois 60532
(630) 829-6079
(630) 442-2438 (mobile)
epeppers@ben.edu
twitter: @BenUElliott
www.ben.edu/newsroom

## Supplemental information provided to University officials Nancy Stoecker and Betsy Rhinesmith during request September 30, 2016 interview after receiving my initial complaint.

*First let me start by saying a small prayer: I pray that you with trust in the Lord with all your heart and lean not on your own understanding in your search for God. For God is truth. Amen*

After I received the meeting request from Betsy which I expected would be a conversation relating to my emailed incident report/complaint, I put together some supplemental information to share with you.

First, I want to reiterate my understanding of a hostile work environment:
https://www.dol.gov/oasam/programs/crc/2011-workplace-harassment.htm

### Hostile Work Environment Harassment
A hostile environment can result from the unwelcome conduct of supervisors, co-workers, customers, contractors, or anyone else with whom the victim interacts on the job, and the unwelcome conduct renders the workplace atmosphere intimidating, hostile, or offensive.

Examples of behaviors that may contribute to an unlawful hostile environment include:

- discussing sexual activities;

- telling off-color jokes concerning race, sex, disability, or other protected bases;
- unnecessary touching;
- commenting on physical attributes;
- displaying sexually suggestive or racially insensitive pictures;
- using demeaning or inappropriate terms or epithets;
- using indecent gestures;
- using crude language;
- sabotaging the victim's work;
- engaging in hostile physical conduct.

### When harassing conduct violates the law*

First, unlawful harassing conduct must be unwelcome *and* based on the victim's protected status. Second, the conduct must be:

1. subjectively abusive to the person affected; and
2. objectively *severe and pervasive* enough to create a work environment that a *reasonable person* would find hostile or abusive.

Whether an instance or a pattern of harassing conduct is *severe or pervasive* is determined on a case-by-case basis, with consideration paid to the following factors:

1. the frequency of the unwelcome discriminatory conduct;
2. the severity of the conduct;
3. whether the conduct was physically threatening or humiliating, or a mere offensive utterance;
4. whether the conduct unreasonably interfered with work performance;
5. the effect on the employee's psychological well-being; and
6. whether the harasser was a superior within the organization.

Secondly, as further evidence of the pervasiveness of the culminating episode by Chad on Tuesday afternoon at the lobby of the Naperville Operational Center, I want to share this follow up note from early November 2015 that I sent Linda from what I overheard walking by Mercy's door and during a meeting with Linda as we prepared for our writing candidate interview:

**From:** Peppers, Elliott E.
**Sent:** Tuesday, November 10, 2015 11:22 AM
**To:** Hale, Linda
**Subject:** chad

Chad is in Mercy's office complaining about something for the last 20 minutes. Perhaps his conduct was addressed?

Summary: Chad was overheard for nearly two hours in Mercy's office defending his too often public rude, garish, vulgar behavior toward other employees as "hard conversations" He seemed very confrontational to Mercy, bullish, intimidating in his tone, and content of his points being made to defend his inappropriate conduct to which I often could hear from my workstation in Lownik which was near his office, as well as during passing business interactions. I learned to ignore it for when I brought it up to Mercy in the past, she stated it was "Just Chad being Chad." Other members of MarCom (nearly the entire Digital team) had complained to me often in the past about Chad's behavior and I stated to address it with Linda and Mercy.

Betsy

**From:** Peppers, Elliott E.
**Sent:** Monday, November 28, 2016 12:15 PM
**To:** Rhinesmith, Betsy; Stoecker, Nancy W.
**Subject:** RE: Confidential Matter Follow Up
**Importance:** High

It's been nearly two months since the public incident involving Chad Treisch, and yet I have received no follow up from the University since my interview and submitting supportive documentation.

As stated previously, my interpretation of federal law is this conduct, which has been pervasive for years, falls under the harassment policy: https://www.eeoc.gov/laws/types/harassment.cfm

Understanding the competing priorities, depth of the process involving numerous interviews to ensure thorough gathering of facts, I am very concerned that this process seems still elongated given its seriousness. The further this prolongs without suitable remedy under the law seems to increase the University's liability per the below:

# Harassment

Harassment is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA).

Harassment is unwelcome conduct that is based on race, color, religion, sex (including pregnancy), national origin, age (40 or older), disability or genetic information. Harassment becomes unlawful where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. Anti-discrimination laws also prohibit harassment against individuals in retaliation for filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or lawsuit under these laws; or opposing employment practices that they reasonably believe discriminate against individuals, in violation of these laws.

Petty slights, annoyances, and isolated incidents (unless extremely serious) will not rise to the level of illegality. To be unlawful, the conduct must create a work environment that would be intimidating, hostile, or offensive to reasonable people.

Offensive conduct may include, but is not limited to, offensive jokes, slurs, epithets or name calling, physical assaults or threats, intimidation, ridicule or mockery, insults or put-downs, offensive objects or pictures, and interference with work performance. Harassment can occur in a variety of circumstances, including, but not limited to, the following:

- The harasser can be the victim's supervisor, a supervisor in another area, an agent of the employer, a co-worker, or a non-employee.



As we discussed, Benedictine takes such allegations very seriously and will not tolerate inappropriate behavior in the workplace. Employees are encouraged to bring such matters to our attention at any time, without fear of any adverse action being taken against them for doing so.

Betsy and I have interviewed the employees involved, including you and Chad, and our investigation is now complete. Though we could not confirm all of your allegations, it does appear that inappropriate behavior and violations of company policy took place, specifically violation of Our Expectations of Employees, found in the employee handbook. A copy of that policy is below:

**Our Expectations of Employees**

If we are to succeed in this competitive marketplace, we must constantly strive to be the best we can be.

• Display respect for yourself and others

• Promote a positive image of yourself and Benedictine University

• Take responsibility for knowing your top job priorities

• Consider how you, personally, can exceed your institutional expectations

• Concentrate on the results that count the most

• Make a difference — so that something very important would be missing if you left

• Manage your own morale

• Practice continuous improvement (the relentless quest for a better way)

• Assume ownership of problems

• Embrace change

Although privacy considerations limit our ability to share confidential information with you about other employees, I can tell you that the appropriate action has been

taken to ensure that such conduct does not repeat itself. Should you experience any further problems, please feel free to let me know or to speak with another trusted member of management. Any future misconduct, including any retaliation, will be dealt with swiftly and severely as the circumstances dictate.

Please do not hesitate to ask questions or speak up about matters that concern you. If you feel any form of retaliation occurs, report it immediately, so it can be addressed quickly.

Thank you again for bringing this matter to our attention.

*Nancy West Stoecker*
Chief Compliance Officer and Legal Counsel
Benedictine University
Naperville Operations Center-Suite 102-138
1832 Center Point Cir
Naperville, Illinois 60563
tel: 630.829.6402
cell:630.432.3220
fax: 630.829.6091
www.ben.edu

**From:** Rhinesmith, Betsy
**Sent:** Monday, November 28, 2016 2:16 PM
**To:** Peppers, Elliott E.; Stoecker, Nancy W.
**Subject:** RE: Confidential Matter Follow Up

Elliott,

Thank you for your email. Due to the fact that we interviewed a large number of employees relating to this complaint, we are still in the process of writing the report. We appreciate your patience in this matter.

Thank you,

# Department response by Executive Director of Marketing and Communications Mercy Robb:

She verbally advised all members of the department that no one should ever be subjected to such behavior in the workplace and if we had individual further concerns to contact HR directly.

After more than two months since the incident and filing my complaint and hearing nothing back from University officials or administration, I directly followed up with Human Resources Director Betsy Rhinesmith and chief compliance officer Nancy Stoecker:

**From:** Rhinesmith, Betsy
**Sent:** Monday, November 28, 2016 2:16 PM
**To:** Peppers, Elliott E.; Stoecker, Nancy W.
**Subject:** RE: Confidential Matter Follow Up

Elliott,

Thank you for your email. Due to the fact that we interviewed a large number of employees relating to this complaint, we are still in the process of writing the report. We appreciate your patience in this matter.

Thank you,
Betsy

**From:** Peppers, Elliott E.
**Sent:** Monday, November 28, 2016 12:15 PM
**To:** Rhinesmith, Betsy; Stoecker, Nancy W.
**Subject:** RE: Confidential Matter Follow Up
**Importance:** High

It's been nearly two months since the public incident involving Chad Treisch, and yet I have received no follow up from the University since my interview and submitting supportive documentation.
As stated previously, my interpretation of federal law is this conduct, which has been pervasive for years, falls under the harassment policy: https://www.eeoc.gov/laws/types/harassment.cfm

Understanding the competing priorities, depth of the process involving numerous interviews to ensure thorough gathering of facts, I am very concerned that this process seems still elongated given its seriousness. The further this prolongs without suitable remedy under the law seems to increase the University's liability per the below:

## Harassment

Harassment is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA).

Harassment is unwelcome conduct that is based on race, color, religion, sex (including pregnancy), national origin, age (40 or older), disability or genetic information. Harassment becomes unlawful where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. Anti-discrimination laws also prohibit harassment against individuals in retaliation for filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or lawsuit under these laws; or opposing employment practices that they reasonably believe discriminate against individuals, in violation of these laws.

Petty slights, annoyances, and isolated incidents (unless extremely serious) will not rise to the level of illegality. To be unlawful, the conduct must create a work environment that would be intimidating, hostile, or offensive to reasonable people.

Offensive conduct may include, but is not limited to, offensive jokes, slurs, epithets or name calling, physical assaults or threats, intimidation, ridicule or mockery, insults or put-downs, offensive objects or pictures, and interference with work performance. Harassment can occur in a variety of circumstances, including, but not limited to, the following:

- The harasser can be the victim's supervisor, a supervisor in another area, an agent of the employer, a co-worker, or a non-employee.

- The victim does not have to be the person harassed, but can be anyone affected by the offensive conduct.

- Unlawful harassment may occur without economic injury to, or discharge of, the victim.

Prevention is the best tool to eliminate harassment in the workplace. Employers are encouraged to take appropriate steps to prevent and correct unlawful harassment. They should clearly communicate to employees that unwelcome harassing conduct will not be tolerated. They can do this by establishing an effective complaint or grievance process, providing anti-harassment training to their managers and employees, and taking immediate and appropriate action when an employee complains. Employers should strive to create an environment in which employees feel free to raise concerns and are confident that those concerns will be addressed.

Employees are encouraged to inform the harasser directly that the conduct is unwelcome and must stop. Employees should also report harassment to management at an early stage to prevent its escalation.

# Employer Liability for Harassment

The employer is automatically liable for harassment by a supervisor that results in a negative employment action such as termination, failure to promote or hire, and loss of wages. If the supervisor's harassment results in a hostile work environment, the employer can avoid liability only if it can prove that: 1) it reasonably tried to prevent and promptly correct the harassing behavior; and 2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.

The employer will be liable for harassment by non-supervisory employees or non-employees over whom it has control (e.g., independent contractors or customers on the premises), if it knew, or should have known about the harassment and failed to take prompt and appropriate corrective action.

When investigating allegations of harassment, the EEOC looks at the entire record: including the nature of the conduct, and the context in which the alleged incidents occurred. A determination of whether harassment is severe or pervasive enough to be illegal is made on a case-by-case basis.

If you believe that the harassment you are experiencing or witnessing is of a specifically sexual nature, you may want to see EEOC's information on sexual harassment.

As a complaining party, can I please get a response as to the status of this investigation and an estimate of when a determination will be forthwith?

Best regards,

Benedictine University
5700 College Road
Lisle, Illinois 60532
(630) 829-6079
(630) 442-2438 (mobile)
epeppers@ben.edu
twitter: @BenUElliott
www.ben.edu/newsroom

You must not lose faith in humanity. Humanity is an ocean; if a few drops of the ocean are dirty, the ocean does not become dirty. Mahatma Gandhi

**From:** Stoecker, Nancy W.
**Sent:** Friday, January 20, 2017 2:39 PM
**To:** Peppers, Elliott E.
**Cc:** Rhinesmith, Betsy
**Subject:** Unacceptable abusive conduct creating and sustaining a hostile work environment at Benedictine--Complaint against Chad Treisch

Elliott, as Betsy and I are completing this investigation and report, our notes indicated that you mentioned a comment that Chad made to you and Phil at the opening of the new Business Building. We did not explore that further with you at the time of your interview. Would you kindly tell us, to the best of your recollection, what Chad said and how you and/or Phil responded?

Many thanks and sorry for the lateness of this follow-up.

*Nancy West Stoecker*
Chief Compliance Officer and Legal Counsel
Benedictine University
Naperville Operations Center-Suite 102-138
1832 Center Point Cir
Naperville, Illinois 60563
tel: 630.829.6402
cell:630.432.3220
fax: 630.829.6091
www.ben.edu

**From:** Rhinesmith, Betsy
**Sent:** Monday, October 03, 2016 5:51 PM

twitter: @BenUElliott
www.ben.edu/newsroom

**From:** Stoecker, Nancy W.
**Sent:** Friday, January 20, 2017 4:16 PM
**To:** Peppers, Elliott E.
**Cc:** Rhinesmith, Betsy
**Subject:** RE: Unacceptable abusive conduct creating and sustaining a hostile work environment at Benedictine--Complaint against Chad Treisch

Elliott thank you

**From:** Peppers, Elliott E.
**Sent:** Friday, January 20, 2017 4:15 PM
**To:** Stoecker, Nancy W. <nstoecker@ben.edu>
**Cc:** Rhinesmith, Betsy <brhinesmith@ben.edu>
**Subject:** RE: Unacceptable abusive conduct creating and sustaining a hostile work environment at Benedictine--Complaint against Chad Treisch

In reference to your inquiry below, these are the details as I recall it:

Phil and I were standing in the lobby near the stairway to the left of the Goodwin entrance off the Campus Quad. Chad was standing nearby and Phil made a brief inquiry to Chad referencing the lobby setup for the opening as looking good or coming along or something to that effect. Chad's response was incredulous and vulgar as he complained about the chair setup being crooked, not aligned properly stating something to the effect that "I could have measured the chairs straighter with my dick." Phil and I just looked at each other in disbelief and didn't say anything.

Elliott

**Elliott Peppers**
Associate Director of Media Relations

- The victim does not have to be the person harassed, but can be anyone affected by the offensive conduct.

- Unlawful harassment may occur without economic injury to, or discharge of, the victim.

Prevention is the best tool to eliminate harassment in the workplace. Employers are encouraged to take appropriate steps to prevent and correct unlawful harassment. They should clearly communicate to employees that unwelcome harassing conduct will not be tolerated. They can do this by establishing an effective complaint or grievance process, providing anti-harassment training to their managers and employees, and taking immediate and appropriate action when an employee complains. Employers should strive to create an environment in which employees feel free to raise concerns and are confident that those concerns will be addressed.

Employees are encouraged to inform the harasser directly that the conduct is unwelcome and must stop. Employees should also report harassment to management at an early stage to prevent its escalation.

# Employer Liability for Harassment

The employer is automatically liable for harassment by a supervisor that results in a negative employment action such as termination, failure to promote or hire, and loss of wages. If the supervisor's harassment results in a hostile work environment, the employer can avoid liability only if it can prove that: 1) it reasonably tried to prevent and promptly correct the harassing behavior; and 2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.

The employer will be liable for harassment by non-supervisory employees or non-employees over whom it has control (e.g., independent contractors or customers on the premises), if it knew, or should have known about the harassment and failed to take prompt and appropriate corrective action.

When investigating allegations of harassment, the EEOC looks at the entire record: including the nature of the conduct, and the context in which the alleged incidents occurred. A determination of whether harassment is severe or pervasive enough to be illegal is made on a case-by-case basis.

If you believe that the harassment you are experiencing or witnessing is of a specifically sexual nature, you may want to see EEOC's information on sexual harassment.

As a complaining party, can I please get a response as to the status of this investigation and an estimate of when a determination will be forthwith?

Best regards,

Elliott

**Elliott Peppers**
Associate Director of Media Relations
**Benedictine University**
**5700 College Road**
**Lisle, Illinois 60532**
(630) 829-6079
(630) 442-2438 (mobile)
**epeppers@ben.edu**

Cc: Chen, Wilson; Elliott Peppers (elliottpeppers@yahoo.com)
Subject: RE: Megan's behavior today in the meeting

That is extremely unacceptable. As tenured faculty, can you and Wilson please address this with Maria? I believe she reports to the Provost. Not only is this un-Benedictine, this is unprofessional. This has been her pattern of behavior throughout this entire engagement. She behaved similarly with MarCom staff, upsetting many to the point that they are disenfranchised and not planning to attend the Teach-In. It is the height of hypocrisy for us to preach on one hand, a values-based institution where we welcome the stranger and treat others like Christ and behind the scenes we do the exact opposite without being challenged or consequence.

Elliott

-----Original Message-----
From: Rushing, Fannie
Sent: Thursday, March 02, 2017 8:51 AM
To: Peppers, Elliott E. <epeppers@ben.edu>
Subject: RE: Megan's behavior today in the meeting

Actually, I think you had already left when it got much worse. She completely lost it and was literally yelling at Wilson Chen. She could not stop herself.

-----Original Message-----
From: Peppers, Elliott E.
Sent: Wednesday, March 01, 2017 7:02 PM
To: Rushing, Fannie
Subject: Megan's behavior today in the meeting

I thought Megan's behavior toward you and others doing the meeting was at times rude, disrespectful, dismissive and condescending

Sent from my iPhone

-----Original Message-----
From: Fletcher, Christine
Sent: Friday, March 03, 2017 1:21 PM
To: Chen, Wilson; Peppers, Elliott E.; Rushing, Fannie
Cc: Elliott Peppers (elliottpeppers@yahoo.com)
Subject: RE: Megan's behavior today in the meeting

We did have a conversation with her about it yesterday, March 2, and informed her that her behavior was unacceptable. We will be having another conversation about this after the teach-in.

Chris Fletcher
630 829-6263
"I respect faith, but doubt will get you your education." Walter Minzer


-----Original Message-----
From: Chen, Wilson
Sent: Thursday, March 02, 2017 10:42 AM
To: Peppers, Elliott E.; Rushing, Fannie
Cc: Elliott Peppers (elliottpeppers@yahoo.com); Fletcher, Christine
Subject: RE: Megan's behavior today in the meeting

Thank you so much, Elliot and Fannie, for sharing your thoughts and observations.  I am running off to teach in a few minutes, so I can't respond fully to the very important issues you raise.  Megan reports to Chris Fletcher, Director of General Education, and I have already had a substantial conversation with Chris about this.  Please give us a few days to address this.  There is so much bearing down upon us in connection with the teach-in at the moment.  But I completely agree with you that this needs to be addressed.  50% of Megan's workload is currently under my supervision, and she reports directly to Chris Fletcher.  I assure you we will be having several conversations about this.

I'm copying this email to Chris as well.

Thanks again,  Wilson


_____
Wilson C. Chen, Ph.D.
Associate Professor, Languages and Literature Assistant Provost for Intercultural Affairs Benedictine University
5700 College Road
Lisle, Illinois 60532
(630) 829-6288, wchen@ben.edu


-----Original Message-----
From: Peppers, Elliott E.
Sent: Thursday, March 02, 2017 9:28 AM
To: Rushing, Fannie

**Peppers, Elliott E.**

| | |
|---|---|
| **From:** | Rose, Jessica F. |
| **Sent:** | Friday, March 10, 2017 10:43 AM |
| **To:** | Peppers, Elliott E. |
| **Subject:** | RE: CONFIDENTIAL DO NOT FORWARD: Complaint against Chad Treisch |
| | |
| **Sensitivity:** | Confidential |

If this is confidential information, why was it sent to both of us at the same time? Also, the expectations were violated, it's just on how you interpret them...

**Jessica Rose**
*Digital Media Coordinator*
Marketing and Communications
Benedictine University
(630) 829-6097

To request a project, please complete the Project Request Form.

**From:** Stoecker, Nancy W.
**Sent:** Friday, March 10, 2017 10:38 AM
**To:** Peppers, Elliott E.; Rose, Jessica F.
**Cc:** Rhinesmith, Betsy; Robb, Mercedes
**Subject:** CONFIDENTIAL DO NOT FORWARD: Complaint against Chad Treisch
**Importance:** High
**Sensitivity:** Confidential

Elliott and Jessica,

This email summarizes the results of Benedictine's investigation into your allegations that Chad Treisch acted inappropriately and/or violated University policy by loudly lecturing and yelling at MarCom employees during a meeting.

As we discussed, Benedictine takes such allegations very seriously and will not tolerate inappropriate behavior in the workplace. Employees are encouraged to bring such matters to our attention at any time, without fear of any adverse action being taken against them for doing so.

Betsy and I have interviewed the employees involved, including you and Chad, and our investigation is now complete. Though we could not confirm all of your allegations, it does appear that inappropriate behavior and violations of company policy took place, specifically violation of Our Expectations of Employees, found in the employee handbook. A copy of that policy is below:

> **Our Expectations of Employees**
> If we are to succeed in this competitive marketplace, we must constantly strive to be the best we can be.
> • Display respect for yourself and others
> • Promote a positive image of yourself and Benedictine University
> • Take responsibility for knowing your top job priorities
> • Consider how you, personally, can exceed your institutional expectations
> • Concentrate on the results that count the most

# September 2016 Misconduct Complaint

**From:** Rose, Jessica F.
**Sent:** Friday, March 10, 2017 10:43 AM
**To:** Peppers, Elliott E.
**Subject:** RE: CONFIDENTIAL DO NOT FORWARD: Complaint against Chad Treisch
**Sensitivity:** Confidential

If this is confidential information, why was it sent to both of us at the same time? Also, the expectations were violated, it's just on how you interpret them...

**Jessica Rose**

*Digital Media Coordinator*
Marketing and Communications
Benedictine University

(630) 829-6097

To request a project, please complete the Project Request Form.

**From:** Stoecker, Nancy W.
**Sent:** Friday, March 10, 2017 10:38 AM
**To:** Peppers, Elliott E.; Rose, Jessica F.
**Cc:** Rhinesmith, Betsy; Robb, Mercedes
**Subject:** CONFIDENTIAL DO NOT FORWARD: Complaint against Chad Treisch
**Importance:** High
**Sensitivity:** Confidential

Elliott and Jessica,

This email summarizes the results of Benedictine's investigation into your allegations that Chad Treisch acted inappropriately and/or violated University policy by loudly lecturing and yelling at MarCom employees during a meeting.

- Make a difference — so that something very important would be missing if you left
- Manage your own morale
- Practice continuous improvement (the relentless quest for a better way)
- Assume ownership of problems
- Embrace change

Although privacy considerations limit our ability to share confidential information with you about other employees, I can tell you that the appropriate action has been taken to ensure that such conduct does not repeat itself. Should you experience any further problems, please feel free to let me know or to speak with another trusted member of management. Any future misconduct, including any retaliation, will be dealt with swiftly and severely as the circumstances dictate.

Please do not hesitate to ask questions or speak up about matters that concern you. If you feel any form of retaliation occurs, report it immediately, so it can be addressed quickly.

Thank you again for bringing this matter to our attention.

*Nancy West Stoecker*
Chief Compliance Officer and Legal Counsel
Benedictine University
Naperville Operations Center-Suite 102-138
1832 Center Point Cir
Naperville, Illinois 60563
tel: 630.829.6402
cell:630.432.3220
fax: 630.829.6091
www.ben.edu

## CERTIFICATE OF SERVICE

The undersigned, Jill M. Willis, certifies that on May 4, 2017, she caused to be served a copy of

the foregoing **Plaintiff's Complaint**, in the above-captioned matter, to be filed with the Clerk of

the United States District Court for the Northern District of Illinois and served on the parties of

record on May 5, 2017 a copy of the **Notice of Lawsuit and Request to Waive Service of**

**Summons,** in the above-captioned matter, addressed to:

> Nancy West Stoecker, Esq.
> Compliance Officer/Director of Internal Audit
> Benedictine University
> 201 Lownik Hall
> 5700 College Road
> Lisle, Illinois 60532-0900
> nstoecker@ben.edu
> Fax: (630) 829-6348

> Jill M. Willis
>
> Attorney for Plaintiff

Jill M. Willis, Esq.
ARDC #6187884
Law Office of Jill M. Willis
3628 South King Drive
Chicago, Illinois 60653
(847) 826-5284
jillwillis.law@gmail.com

17