# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ELLIOTT E. PEPPERS | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | Case No. 1:17-cv-03387 |
| | ) | |
| BENEDICTINE UNIVERSITY, MICHAEL | ) | Magistrate Judge M. David Weisman |
| S. BROPHY, in his official capacity as | ) | |
| Benedictine President; CHAD TREISCH, in | ) | |
| his official capacity as Benedictine Executive | ) | |
| Director of Facilities and Planning; MARCO | ) | |
| MASINI, in his official capacity as Benedictine | ) | |
| Vice President for Student Life; and HOPE | ) | |
| KEBER, in her official capacity as Benedictine | ) | |
| Counselling Center Director, | ) | |
| | ) | |
| *Defendants.* | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendants Benedictine University ("Benedictine"), Michael S. Brophy ("Brophy"), Chad Treisch ("Treisch"), Marco Masini ("Masini") and Hope Keber ("Keber", and together with Brophy, Treisch, and Masini, the "Individual Defendants") moved to dismiss Plaintiff Elliott Pepper's Second Amended Complaint[1] ("Amended Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). For the reasons set forth herein, the Court (1) grants the Individual Defendants' motion to dismiss with prejudice, (2) grants Defendant Benedictine's motion to dismiss as to Counts I and II with prejudice, and (3) denies Defendant Benedictine's motion to dismiss as to Count III.

---

[1] Plaintiff styles his filing as the "Second Amended Complaint," but only one other complaint has been previously filed in this matter. (*See* Dkt. 1.)

**RELEVANT FACTS**

Plaintiff asserts claims under the Civil Rights Act of 1871, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").[2]

Between July 2011 and June 2017, Plaintiff, who is African-American, worked at Benedictine as a National Media Coordinator and then as Associate Director of Media Relations. (*Id.* at ¶¶ 6, 7, 12.) Plaintiff alleges that the following incidents occurred at Benedictine over the course of several years.

First, in October of 2013, Defendant Keber came into his office "yelling and wagging her finger in his face" over an email Plaintiff sent to her manager. (*Id.* at ¶ 14.) Keber's "volatile behavior" continued, prompting Plaintiff to bring the matter to Defendant Masini's attention. (*Id.* at ¶¶ 15, 16.) Masini allegedly delayed meeting with Plaintiff and laughed about the incidents when he and Plaintiff eventually met in person. (*Id.* at ¶ 17.)

Plaintiff also alleges that in November 2015, Defendant Treisch "engaged in frequent, disruptive, loud tirades" that were directed at Plaintiff, other employees, and people speaking with Treisch on the phone. (*Id.* at ¶ 19.) According to Plaintiff, Treisch's behavior "created an uncomfortable, hostile work environment," and Plaintiff's complaints about such behavior "went unanswered." (*Id.* at ¶ 20.) On September 27, 2016, Defendant Treisch allegedly "harangued" Plaintiff and his colleagues with aggressive and vulgar language. (*Id.* at ¶ 24.) Plaintiff reported the incident to Defendant Brophy, among others, but did not receive what he thought to be an

---

[2] Plaintiff also hastily asserts the following causes of action: (a) negligent hiring and retention, (b) negligent infliction of emotional harm, (c) negligent supervision, and (d) intentional infliction of emotional harm. (Dkt. 29 at ¶ 1.) Plaintiff, however, provides none of the elements of these causes of action or an explanation of how the elements have been satisfied. Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A list of different causes of action, without more, falls woefully short of properly alleging those claims. To the extent Plaintiff intended for these to be legitimate causes of action, the Court dismisses them without prejudice.

adequate response. (*Id.* at ¶ 26.) Following a subsequent incident with Treisch, Plaintiff submitted a complaint to management and received a response acknowledging that "'inappropriate behavior and violations of company policy took place.'" (*Id.* at ¶ 28.) Treisch purportedly retaliated against Plaintiff and others "by engaging in further lengthy, angry, threatening tirades." (*Id.* at ¶ 29.) Plaintiff also alleges that Treisch made vulgar comments on January 20, 2017 to Plaintiff and another employee. (*Id.* at ¶ 27.) Plaintiff speculates that if he had engaged in similar behavior to Treisch (who is white), Plaintiff likely would have been immediately terminated. (*Id.* at ¶ 32.)

Finally, on March 3, 2017, after witnessing an unidentified female staff member engage in "rude and condescending behavior" towards African- and Asian-American employees, Plaintiff reported the incident to Benedictine leadership and allegedly received no response. (*Id.* at ¶ 33.)

Plaintiff filed a claim with the Chicago office of the Equal Employment Opportunity Commission ("EEOC") on January 9, 2017 and received his Right to Sue on February 3, 2017. (*Id.* at ¶ 2.) On June 20, 2017, Benedictine terminated Plaintiff's employment, citing a need for a reduction in force. (*Id.* at ¶ 7.) Plaintiff alleges that Benedictine thereafter posted a position substantially similar to the one that Benedictine had purportedly eliminated. (*Id.* at ¶ 8.)

**PROCEDURAL HISTORY**

On May 4, 2017, Plaintiff filed his initial complaint against Defendants and the parties consented to proceed before this Court on June 19, 2017. (*See* Dkt. 1, 12.) Defendant Benedictine and the Individual Defendants filed motions to dismiss which were later withdrawn after the Court granted Plaintiff's oral motion to amend his complaint. (*See* Dkt. 15, 16, 28.) Plaintiff filed his Amended Complaint on September 5, 2017, seeking punitive damages in

excess of $15,000.00 and attorneys' fees.[3]  (Dkt. 29 at ¶¶ 5, 77.)  Defendants once again moved to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). (*See* Dkt. 30, 31.)

## LEGAL STANDARD

In evaluating a Rule 12(b)(6) motion to dismiss, the Court accepts the complaint's well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  A Rule 12(b)(6) motion "tests only the legal sufficiency of the complaint," not its merits.  *Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 980 (N.D. Ill. 2013).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 570).  Plausibility requires that the complaint plead facts sufficient for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678.  The Federal Rules of Civil Procedure require a plaintiff to "plead *claims* rather than facts corresponding to the elements of a legal theory."  *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (emphasis in original).  A complaint should therefore not be dismissed for failure to state a claim "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Embry-Hampton v. Chi. Pub.*

---

[3] Plaintiff failed to claim any actual damages in the Amended Complaint.  Recognizing the omission, Plaintiff improperly attempts to seek compensatory damages for lost wages and benefits through his response brief.  (*See* Dkt. 38 at p. 5.)  Alternatively, Plaintiff requests that the Court grant him leave to file an amended complaint.  (*Id.* at p. 5.)  Plaintiff also attaches seven exhibits to the response brief that are not included in the Amended Complaint. (*Id.* at Exhibits A–G.)  Generally, a court "may only consider the plaintiff's complaint when ruling on a Rule 12(b)(6) motion."  *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013); *see also Dyer v. Lumpkin*, No. 01 C 1691, 2001 WL 1001126, at *4 (N.D. Ill. Aug. 23, 2001) (finding that the plaintiff could not amend her complaint "through attachments to her response to a motion to dismiss").  The Court will therefore disregard the additional exhibits attached by Plaintiff in his response brief because these materials were not referenced in the Amended Complaint.

*Sch.*, No. 05 C 6165, 2006 WL 1156103, at *1 (N.D. Ill. May 1, 2006).  Although the Court must accept as true the complaint's factual allegations and draw reasonable inferences in favor of the plaintiff, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## ANALYSIS

### 1.  Plaintiff's Claims Against the Individual Defendants

Defendants contend that Plaintiff's claims against the Individual Defendants should be dismissed because suits brought against employees in their official capacities are essentially brought against the employer.  (Dkt. 32 at p. 5.)  Plaintiff failed to address this point in his response and therefore waives any argument he may have asserted.  *See, e.g.*, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (noting that "[f]ailure to respond to an argument . . . results in waiver").

The law is clear that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Embry-Hampton*, 2006 WL 1156103, at *3 (dismissing § 1981 claim against individual defendant sued in his official capacity because it was redundant of the claim brought against his employer); *Hamilton v. City of Chi.*, No. 93 C 3342, 1993 WL 535351, at *3 (N.D. Ill. Dec. 17, 1993) (dismissing Title VII claim against individual defendants because they were "redundant of the claims" brought against the City).  Plaintiff's Amended Complaint expressly states that the Individual Defendants have been sued in their "official capacity."  (Dkt. 29 at ¶ 10 (Brophy sued "in his official capacity as Benedictine President"); ¶ 11 (Masini sued "in his official capacity as Benedictine Vice President for Student Life"); ¶ 12 (Treisch sued "in his official capacity as Benedictine Executive Director of Facilities Management and Planning"); ¶ 13 (Keber sued "in her official capacity as Benedictine Counseling Center Director").)  As Plaintiff's claims against

the Individual Defendants are redundant of those brought against Benedictine, the Court grants the Individual Defendants' motion to dismiss with prejudice.[4]

## 2. Plaintiff's Title VII and Section 1981 Claims (Counts I and II)[5]

Title VII prohibits employers from allowing a hostile work environment based on an employee's "inclusion in a protected class, such as race, gender, or national origin." *Aguilera v. Vill. of Hazel Crest*, 234 F. Supp. 2d 840, 846 (N.D. Ill. 2002). To state a claim under Title VII on the basis of a hostile work environment, a plaintiff must establish that: "'(1) he was subject to unwelcome harassment; (2) the harassment was based on his race [or sex]; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability.'" *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895–96 (7th Cir. 2016).

### a.) *Plaintiff Was Subject to Unwelcome Harassment*

Plaintiff's allegations concerning Defendant Treisch alone, viewed in a light favorable to Plaintiff, establish that the first prong of the analysis has been satisfied.[6] The common understanding of "harass" is "to create an unpleasant or hostile situation."[7] Defendant Treisch's use of aggressive and crude language – at times directed towards Plaintiff – is enough to presume

---

[4] Accordingly, the Court need not address the Individual Defendants' argument that dismissal is also appropriate because they were not named in Plaintiff's EEOC charge and therefore may not be sued under Title VII. (*See* Dkt. 32 at pp. 10–11.) As discussed *supra*, suits against individuals sued in their official capacity are essentially suits against their employer and therefore it is irrelevant whether the Individual Defendants were included in the EEOC charge for purposes of the instant motions to dismiss.

[5] As Title VII and Section 1981 claims are "governed by the same framework of analysis," the Court's findings with respect to Count I apply to Count II as well. *Cable v. FCA US LLC*, 679 Fed. App'x 473, 476 (7th Cir. 2017); *see also Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011) ("We analyze § 1981 discrimination claims in the same manner as claims brought pursuant to Title VII of the Civil Rights Act.").

[6] Defendants argue that only those actions occurring on or after March 15, 2016 may be considered by the Court – all other alleged behavior falls outside the 300-day statutory window and is time-barred. A court, however, may "'review all such [discriminatory] conduct, including those acts that occur outside the filing period.'" *Collins v. Nw. Univ.*, 164 F. Supp. 3d 1071, 1081 (N.D. Ill. 2016). As long as "'an act contributing to the claims occurs within the filing period the entire time period of the hostile environment may be considered by a court for purposes of determining liability.'" *Id.*

[7] *See* Merriam-Webster's Dictionary.

that Plaintiff experienced unpleasant and uncomfortable situations. (Dkt. 29 at ¶¶ 19, 20, 24, 29.)

**b.) *Plaintiff Has Not Adequately Alleged That the Harassment Was Based on His Race or Sex***

Plaintiff is unable, however, to establish any of the remaining elements of the analysis. First, Plaintiff has not demonstrated that the harassment was based on his race or sex. Although the connection "need not be explicit, 'there must be some connection, for not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority.'" *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 896 (7th Cir. 2016); *see also Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1159 (7th Cir. 2014) ("'[A]lleged harassment must be sufficiently connected to race before it may reasonably be construed as being motivated by the defendant's hostility to the plaintiff's race.'") The Amended Complaint lacks any facts to suggest that Defendants acted in a particular way towards Plaintiff because of his race or sex. Plaintiff alleges that in addition to confronting Plaintiff individually, Defendant Treisch also "harangued" the entire Marketing and Communications staff and used vulgar language when speaking on the phone to others. (Dkt. 29 at ¶¶ 19, 24.) The law is clear that an "equal opportunity" harasser falls "outside the scope of Title VII." *Armintrout v. Bloomingdale's Pizza, Inc.*, No. 04 C 313, 2007 WL 837279, at *7 (N.D. Ill. Mar. 13, 2007); *see also Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir. 2000) ("Title VII does not cover the 'equal opportunity' . . . harasser . . . because such a person is not *discriminating* on the basis of sex. He is not treating one sex better (or worse) than the other; he is treating both sexes the same (albeit badly).") (emphasis in original). The remainder of Plaintiff's allegations also lack a sufficient connection between his race/sex and the incidents at issue and fail to show that any hostility directed at or felt by Plaintiff was on account of his

protected status. The Amended Complaint contains no allegations that any of the Defendants made racially charged remarks or engaged in actions that had objectively racial undertones. As for discrimination based on sex, again, Plaintiff fails to allege any facts that would suggest the mistreatment described was motivated by Plaintiff's sex. This omission alone dooms Plaintiff's claims. When this omission is coupled with the allegation that three of the alleged harassers are of the same sex as Plaintiff, the Court is unable to discern any reasonable inference that the offending conduct was motivated by Plaintiff's sex. Accordingly, as Plaintiff has not established the second element of the analysis, his Title VII and Section 1981 claims have no merit.

**c.) *The Harassment Was Not Severe or Pervasive***

Although Plaintiff's failure to meet the second prong of the analysis is sufficient to grant Defendants' motion to dismiss as to Counts I and II, the Court notes that Plaintiff's argument fails as to the remaining elements as well. The Amended Complaint does not adequately allege that the harassment was "severe or pervasive," as is required to state a claim under Title VII. In evaluating a hostile work environment claim, a court must consider whether the alleged conduct was "both objectively and subjectively offensive." *Aguilera v. Vill. of Hazel Crest*, 234 F. Supp. 2d 840, 846 (N.D. Ill. 2002). Whether a work environment is hostile depends on "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 641 (7th Cir. 2001). To be actionable, the workplace must be "'hellish.'" *Id*. Importantly, Title VII does not "guarantee a perfect work environment," and therefore "not all workplace unpleasantries give rise to liability." *Aguilera*, 234 F. Supp. 2d at 846.

While the Court has no reason to doubt that the incidents complained of were subjectively offensive to Plaintiff, objectively they are not enough to demonstrate a hostile work environment. Plaintiff offers only a relatively short list of hostile occurrences over several years of employment at Benedictine, including Defendant Treisch's tendency to use aggressive language and Defendant Keber "yelling and wagging her finger in his face." (Dkt. 29 at ¶¶ 14, 19, 20, 24, 27, 29.) These allegations do not rise to the level of an objectively hostile, "hellish" work environment. *Compare Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1046 (7th Cir. 2002) (describing an "appalling litany of misconduct" that included pervasive vile epithets and graffiti aimed at the plaintiff, as well as references to the KKK and "White Power" and finding that plaintiff had established a claim under Title VII).

**d.)** *Plaintiff Has Not Established a Basis for Employer Liability*

Finally, Plaintiff has not established that there is a basis for employer liability. Employers are strictly liable if a supervisor engaged in the discriminatory behavior. If, on the other hand, co-workers inflicted the harassment, plaintiff must show that the employer has been "'negligent either in discovering or remedying the harassment.'" *Williams v. Waste Mgmt. of Ill. Inc.*, 361 F.3d 1021, 1029 (7th Cir. 2004). In other words, the employer "'can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring.'" *Id.* Here, Plaintiff has not expressly pled that the Defendants who allegedly engaged in discriminatory behavior were Plaintiff's direct supervisors and the Court is not prepared to speculate on that point.

For all of these reasons, Count I and II of Plaintiff's Amended Complaint are dismissed with prejudice.

### 3. Plaintiff's Retaliation Claim Under Title VII (Count III)

Pursuant to Title VII of the Civil Rights Act of 1964, 78 Stat. 255, as amended, 42 U.S.C. § 2000e-3(a), it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." In order to establish a *prima facie* case of Title VII retaliation, Plaintiff must demonstrate that: (1) he engaged in "statutorily protected expression," (2) he suffered an adverse employment action, and (3) there is a "causal link" between the protected expression and the adverse action. *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996). Under the *McDonnell Douglas* burden-shifting analysis, if the plaintiff establishes a *prima facie* case of retaliation, the burden of production shifts to the defendant to show a "legitimate, non-retaliatory reason for its actions." *Id.* If the defendant is successful in doing so, the plaintiff has the opportunity to show that the defendant's "proffered reasons are pretextual."[8] *Id.*

### a.) *Plaintiff Has Engaged in Statutorily Protected Expression*

Plaintiff has satisfied the first element of establishing a *prima facie* case of retaliation. To constitute protected expression, "'the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class.'" *Kodl v. Bd. of Educ.*, 490 F.3d 558, 563 (7th Cir. 2007). In addition to a formal law suit, "[b]oth informal complaints to supervisors and formal charges with the EEOC constitute statutorily protected expression." *Walls v. Turano Baking Co.*, 221 F. Supp. 2d 924, 931 (N.D. Ill. 2002). An employee may

---

[8] The Seventh Circuit recently confirmed that its ruling in *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016) did not dislodge the *McDonnell Douglas* framework. *Golla v. Office of the Chief Judge of Cook Cty., Ill.*, 875 F.3d 404, 407 (7th Cir. 2017). Instead, *Ortiz* clarified the applicable legal standard – "'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the . . . adverse employment action.'" *Id.* (citing *Ortiz*, 834 F.3d at 765). Beyond that, *Ortiz* has no impact on the instant opinion at this juncture.

engage in statutorily protected expression even if the alleged harassment does not violate Title VII. *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir. 1994); *see also Rucker v. High Educ. Aids Bd.*, 669 F.2d 1179, 1182 (7th Cir. 1982) ("[I]t is good faith and reasonableness, not the fact of discrimination, that is the critical inquiry in a retaliation case.").

Here, Plaintiff filed a formal complaint with the EEOC on January 9, 2017.[9]  (Dkt. 29 at ¶ 2.)  Although, as discussed above, the alleged harassment does not rise to the level of a Title VII violation, Plaintiff's allegations of misconduct were not "utterly baseless" and the Court has not been presented with any reason to doubt the complaints were lodged in good faith.  Plaintiff therefore satisfied the first element of his *prima facie* case.

**b.)** ***Plaintiff Has Suffered an Adverse Employment Action***

Plaintiff has also met the second element of a retaliation claim.  An adverse employment action is a "'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  *Noble v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 130 F. Supp. 3d 1166, 1174 (N.D. Ill. 2015).  Here, Plaintiff suffered an adverse employment action when Benedictine terminated his employment on June 20, 2017.  (Dkt. 29 at ¶ 7.)

**c.)** ***Plaintiff Established a Causal Link Between Protected Expression and Adverse Employment Action***

Finally, Plaintiff has adequately alleged a causal link between his protected expression and Benedictine's adverse employment action.  To establish a causal link, a plaintiff must demonstrate that the defendant "'would not have taken the adverse . . . action but for [his]

---

[9] Even though Plaintiff alleges that he began reporting the harassment he encountered as early as October 2013, "[m]erely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference," does not constitute "protected activity."  *See, e.g.*, *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).  Instead, the complaint "must indicate the discrimination occurred because of sex, race, national origin, or some protected class."  *Id.*  Therefore, for purposes of resolving this motion and based on the pending complaint, the Court presumes that Plaintiff first connected the alleged offensive conduct to race in his EEOC complaint.

protected activity." *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017). Put another way, a plaintiff "only ha[s] to establish 'that the protected activity and the adverse action were not wholly unrelated.'" *Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chi.*, 104 F.3d 1004, 1014 (7th Cir. 1997). A plaintiff may rely on direct or circumstantial evidence to show "that the protected conduct was a substantial or motivating factor in the employer's decision." *Baines*, 863 F.3d at 661; *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005). If the causation is based on "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action," the temporal proximity must be "'very close.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). *Compare Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir. 1992) (finding a four month period insufficient to raise the inference that plaintiff's protected activity caused the adverse action) *with McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir. 1997) (holding that 2-3 day period was sufficient). Suspicious timing of termination, however, may allow a plaintiff's claim to survive if "there is other evidence that supports the inference of a causal link." *Culver*, 416 F.3d at 546.

Here, the Amended Complaint adequately states a claim of retaliation. Viewing Plaintiff's allegations in the light most favorable to him as is required, Plaintiff has satisfactorily demonstrated a causal link between his protected expression – filing an EEOC complaint on January 9, 2017 – and an adverse employment action – his termination on June 20, 2017. (Dkt. 29 at ¶¶ 2, 7.) In addition to alleging temporal proximity, Plaintiff alleges that Benedictine posted a position substantially similar to Plaintiff's shortly after his termination, even though the cited reason for the termination was a reduction in force. (*Id.* at ¶ 75.) Together, these allegations are sufficient to withstand Benedictine's motion to dismiss as to Count III.

## Conclusion

For the reasons set forth above, the Court (1) grants the Individual Defendants' motion to dismiss [31] with prejudice, (2) grants Benedictine's motion to dismiss [30] as to Counts I and II with prejudice, and (3) denies Benedictine's motion to dismiss as to Count III. Plaintiff has leave to file a Second Amended Complaint by January 5, 2018 for the sole purpose of alleging compensatory damages. Ruling on motion hearing set for December 13, 2017 is stricken. Status hearing set for December 13, 2017 is stricken and reset to February 21, 2018 at 9:15 a.m.

**SO ORDERED.**                    **ENTERED:**

**DATE: 12/12/17**

*M. David Weisman*
**M. David Weisman**
**United States Magistrate Judge**